UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GRATUITY SOLUTIONS, LLC, and GRATUITY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 1:22-cv-11539-JEK |
| TOAST, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO STAY PENDING *INTER PARTES* REVIEW**

**KOBICK, J.**

This is a patent infringement and breach of contract action filed by Gratuity Solutions, LLC, and Gratuity, LLC (collectively, "Gratuity"), against Toast, Inc. Gratuity alleges that Toast is infringing U.S. Patent No. 9,741,050 (the "'050 patent") and has breached two non-disclosure agreements.[1] Now before the Court is Toast's motion to stay this action in its entirety pending the issuance of a final written decision by the Patent Trial and Appeal Board ("PTAB"), which recently instituted *inter partes* review ("IPR") of the '050 patent. For the reasons below, Toast's motion will be granted, and this case will be stayed pending the PTAB's decision in the IPR proceeding. Even though Toast will experience some prejudice from the delay, a stay is warranted because this action remains at an early stage in the litigation—with the *Markman* hearing, more discovery, and summary judgment lying ahead—and, since the sole remaining patent is now subject to the IPR, the PTAB decision will likely simplify the issues in the case.

---

[1] Gratuity had also alleged that Toast was infringing U.S. Patent No. 10,726,436 (the "'436 patent"), but the Court dismissed that claim on June 7, 2023. ECF 48.

**BACKGROUND**

The Court briefly rehearses the relevant facts, as described in its June 7, 2023 order on Toast's motion to dismiss, *see* ECF 48, at 2-8, and supplemented with pertinent details about the IPR proceeding and other developments from the parties' declarations, *see* ECF 100, 106-2.

**I.   This Litigation**

Aleksandar Stepanovich cofounded Gratuity "to develop, commercialize, and sell" his gratuity management software to hospitality businesses. ECF 1, ¶¶ 13-14. He is the inventor, and Gratuity is the assignee and owner, of the '050 and '436 patents. *Id.* ¶¶ 12, 40, 58. Both patents are titled "System and Method for Managing Gratuities," and the '436 patent is a continuation of the '050 patent. *Id.* ¶ 12. The two patents, according to the complaint, "enhanc[e] the operations of point-of-sale systems, employee-time-and-attendance systems, and payroll systems," as well as "the performance of tipped-employee business computer systems," by "enabling them to aggregate and compile tipped transaction and employee performance data and automatically apply pre-defined distribution rules to manage payroll." *Id.* ¶¶ 16, 18.

In August 2016, Gratuity approached Toast to discuss the possibility of Toast's customers using Gratuity's platform. *Id.* ¶ 27. Toast has its own restaurant management platform that offers point of sale, operations, and financial technology solutions. ECF 48, at 2. To facilitate those discussions, the parties entered into a non-disclosure agreement. ECF 1, ¶ 28; *see* ECF 1-3.

In late 2019, a broker, acting on behalf of Gratuity, asked Toast about acquiring Gratuity. ECF 1, ¶ 32. After Toast expressed interest, the parties executed another non-disclosure agreement. *Id.*; *see* ECF 1-4. In January 2020, Toast told the broker that it was no longer interested in acquiring Gratuity. ECF 1, ¶ 33. In September 2021, Gratuity asked Toast again about a merger or acquisition, but Toast did not respond. *Id.* ¶ 35.

2

In November 2021, Toast launched its own gratuity management solution software named "Toast Tips Manager." *Id.* ¶ 36. Gratuity responded in June 2022 by sending Toast a cease-and-desist letter alleging infringement of the '050 and '436 patents. *Id.* ¶ 37.

In September 2022, Gratuity initiated this action, similarly alleging infringement of both patents as well as breach of the two non-disclosure agreements. *See id.* ¶¶ 38-86. Toast then moved, in November 2022, to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF 13. In June 2023, the Court granted Toast's motion to dismiss the claim alleging infringement of the '436 patent, but denied the motion as to Gratuity's claims for infringement of the '050 patent and breach of contract. ECF 48.

Since then, the parties have filed their preliminary claim construction briefs and their replies. *See* ECF 85-88, 96-97, 102-04, 108. They have also engaged in some discovery. *See* ECF 100, ¶¶ 7-16. The parties have, for example, each served twelve interrogatories. *Id.* ¶ 16. Gratuity has produced six emails and over 2,592 pages of material, while Toast has produced 1,673 pages of documents. *Id.* ¶¶ 7-10. Looking ahead, the *Markman* hearing is scheduled for May 6, 2024; summary judgment and *Daubert* motions are due on October 16, 2024; and the trial is set for March 24, 2025. ECF 73, 91.

Over the past two years, Gratuity has also lost approximately 76 customers to Toast, its direct competitor. ECF 106-2, ¶¶ 4-6. Most recently, Gratuity learned that four customers were switching to Toast last week. *Id.* ¶ 6.

## II.     The IPR Proceeding and This Motion

In 2011, Congress enacted the Leahy-Smith America Invents Act "to 'improve patent quality and limit unnecessary and counterproductive litigation costs'" by establishing the current IPR process. *Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295, 1297-98 (Fed. Cir. 2020) (citations

omitted); *see* 35 U.S.C. §§ 311-19. That process offers "an 'efficient system for challenging patents that should not have issued,'" which permits the agency "to hel[p] resolve concrete patent-related disputes among parties" and "to reexamine an earlier agency decision" through "a second look at an earlier administrative grant of a patent." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279-80 (2016) (citation omitted). As the Federal Circuit has explained, the IPR process "was designed to give the agency an opportunity to correct its mistakes, to give courts the benefit of the agency's consideration of the effect of prior art on patents being asserted in litigation, and to reduce the burden of litigation on the parties and the courts." *In re Intel Corp.*, No. 2021-168, 2021 WL 4427875, at *2 (Fed. Cir. Sept. 27, 2021). Pursuant to the statute, Toast had no "more than 1 year after" Gratuity filed this complaint on September 19, 2022 to request the IPR with the PTAB. 35 U.S.C. § 315(b).

After Gratuity served its preliminary infringement contentions in early September 2023, ECF 100, ¶ 5, Toast timely filed its IPR petition on September 18, 2023, *id.* ¶ 6, seeking the PTAB's review of all thirteen claims of the '050 patent as obvious over the prior art, ECF 100-1, at 2. Under the statute, the PTAB may not institute the IPR unless the information presented in that petition "shows that there is a reasonable likelihood that [Toast] would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

On March 27, 2024, the PTAB granted Toast's petition, concluding that Toast had "demonstrated at least a reasonable likelihood of success in proving that at least one claim (i.e., independent claim 1) of the '050 Patent is unpatentable." ECF 100-1, at 27. Because the PTAB also provided notice of the institution of a trial in its order, *id.* at 28, the PTAB's final written decision in the IPR must "be issued not later than 1 year after [that] date" absent "good cause" for "extend[ing] the 1-year period by not more than 6 months," 35 U.S.C. § 316(a)(11).

One week later, on April 3, 2024, Toast filed a motion to stay this action pending the PTAB's decision in the IPR proceeding. ECF 98. Gratuity opposed that motion on April 17, 2024. ECF 106. The Court held a hearing on April 22, 2024. ECF 107.

## DISCUSSION

"The ability to stay cases," including pending the IPR, "is an exercise of a court's inherent power to manage its own docket." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016). "A decision to stay litigation is committed to the sound discretion of the trial court." *In re Corel Software LLC*, 778 F. App'x 951, 953 (Fed. Cir. 2019). Courts ordinarily analyze the following three factors to determine whether a stay pending the IPR is appropriate: (1) the stage of the proceedings; (2) the potential for the stay to simplify issues in the case; and (3) whether a stay will impose undue prejudice on the non-moving party or give the moving party a clear tactical advantage. *See Murata Mach.*, 830 F.3d at 1359-60.

### I.   Stage of the Litigation

The first factor looks to "'whether discovery is complete and whether a trial date has been set,'" *Murata Mach.*, 830 F.3d at 1361 (citation omitted), because "'[t]he earlier the stage of proceedings, the greater the reason to grant a stay,'" *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015) (quoting *SurfCast, Inc. v. Microsoft Corp.*, No. 2:12-cv-333-JDL, 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014). Some considerations here weigh against a stay. The "parties have expended time, effort and expense with respect to the claim construction briefing," which is now complete. *DiversiTech Corp. v. RectorSeal, LLC*, No. 20-cv-11896-NMG, 2021 WL 2953324, at *2 (D. Mass. July 14, 2021); *see* ECF 85-88, 96-97, 102-04. In addition, Toast has produced 1,673 pages of documents, while Gratuity has produced six emails and over 2,592 pages

5

of material, 2,000 pages of which it produced on February 29, 2024. ECF 100, ¶¶ 7-10. The parties have also each served twelve interrogatories. *Id.* ¶ 16. And a trial date has been set. ECF 73.

But these considerations are outweighed by the "significant amount of work [that] still remains to be done by the parties and this Court." *ACQIS*, 109 F. Supp. 3d at 357; *see Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) ("Despite the substantial time and effort already spent in this case, the most burdensome task is yet to come."). The *Markman* hearing scheduled for May 6, 2024 has yet to occur, summary judgment and *Daubert* motions are not due until October 16, 2024, and the trial is nearly a year from now. ECF 73, 91. There has also only been limited discovery. *See* ECF 100, ¶¶ 7-16. No discovery, for example, has taken place concerning Gratuity's breach of contract claim. *Id.* ¶ 13. Nor have the parties noticed or taken any fact or expert depositions, except for the depositions of the claim-construction experts. *Id.* ¶¶ 14-15. Thus, "the most burdensome stages of the cas[e]—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *DiversiTech*, 2021 WL 2953324, at *2 (quoting *NST Glob., LLC v. SIG Sauer Inc.*, No. 19-cv-792-PB, 2020 WL 1429643, at *2 (D.N.H. Mar. 24, 2020)). Indeed, courts have stayed cases where litigation had progressed well beyond the current juncture of this action. *See ACQIS*, 109 F. Supp. 3d at 357 (collecting cases in which courts granted stays where discovery was complete and claim construction orders had been issued); ECF 240, *ModernTX, Inc. v. Pfizer Inc.*, No. 22-cv-11378-RGS (Apr. 12, 2024) (granting motion to stay pending IPR where the claim construction phase and fact discovery had concluded). Since this case remains at an early stage with claim construction, more discovery, and summary judgment ahead, the first factor supports a stay.

**II.      Simplification of the Issues**

The second factor concerns "'whether a stay will simplify the issues in question and trial of the case.'" *Murata Mach.*, 830 F.3d at 1361 (citation omitted). The IPR process can simplify court cases in several ways. *See In re Body Sci. LLC Pat. Litig.*, No. 1:12-MD-2375-FDS, 2012 WL 5449667, at *2-3 (D. Mass. Nov. 2, 2012) (listing seven advantages of the IPR). Most notably, "when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013); *SHFL Ent., Inc. v. DigiDeal Corp.*, 729 F. App'x 931, 934 (Fed. Cir. 2018) ("district court . . . correctly found the case moot as to" the claims that the Patent and Trademark Office "cancelled during the reexamination"); *Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.*, 645 F. App'x 1018, 1023 (Fed. Cir. 2016) (same). If a claim is not cancelled, the petitioner—in this case, Toast—is estopped from presenting to the court "any ground that [it] raised or reasonably could have raised during" the IPR "that results in a final written decision." 35 U.S.C. § 315(e)(2); *see Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1251 (Fed. Cir. 2019) ("[T]he issue preclusion doctrine can apply in this court to the [PTAB's] decision in an IPR once it becomes final.").

The sole remaining patent in this case is now subject to the IPR. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014) ("[N]o doubt the case for a stay is stronger after . . . review has been instituted."). The IPR proceeding could simplify the issues "because the outcome of the [IPR] would be likely to assist the court in determining patent validity and, if the claims were canceled in the [IPR], would eliminate the need to try the infringement issue." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998); *see Smartflash LLC*, 621 F. App'x at 1005 ("A determination from the PTAB that all the asserted

7

claims are patent ineligible will spare the parties and the district court the expense of any further litigation, including a trial."). Indeed, "the maximum potential for simplification of issues" exists, *DiversiTech*, 2021 WL 2953324, at *3 (internal quotation marks omitted), because the PTAB has instituted an IPR for all thirteen claims of the '050 patent, *see* ECF 100-1, at 28. While Toast suggests that the PTAB will likely cancel some or all of those claims, *see* ECF 99, at 13, there is no doubt that, regardless of the outcome, the PTAB's decision will simplify the issues in this case. A final decision by the PTAB cancelling some or all of the claims could eliminate the need for a trial on Toast's alleged infringement or clarify the scope of the remaining claims. *See Slip Track Sys.*, 159 F.3d at 1341; *Fresenius USA*, 721 F.3d at 1340. The IPR could further simplify this case because Toast would be estopped from presenting "any ground that [it] raised or reasonably could have raised during" the IPR proceeding. 35 U.S.C. § 315(e)(2).

Gratuity argues that a stay is, nonetheless, inappropriate because the IPR will not simplify its breach of contract claim. But Gratuity concedes that this claim is factually "intertwined to some extent with" its infringement claim. ECF 106, at 7. Indeed, the complaint alleges that Toast violated the terms of two non-disclosure agreements by improperly using Gratuity's "proprietary information" regarding "the design, implementation, and instructions for use of the Toast Tips Manager," which involves the same technology associated with the '050 patent. ECF 1, ¶¶ 41, 83-84. Courts routinely grant stays when, as here, "[f]aced with such factually overlapping patent and non-patent claims." *Amsted Rail Co., Inc. v. Hum Indus. Tech., Inc.*, No. 4:22-cv-00445-AGF, 2023 WL 2864553, at *4 (E.D. Mo. Apr. 10, 2023) (collecting cases); *see also PopSockets LLC v. Quest USA Corp.*, No. 17-cv-3653-FBCLP, 2018 WL 4660374, at *2 (E.D.N.Y. Sept. 28, 2018). Accordingly, this second factor weighs strongly in favor of staying the entire action.

**III.     Undue Prejudice or Clear Tactical Disadvantage**

The third and final factor addresses "'whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.'" *Murata Mach.*, 830 F.3d at 1361 (citation omitted). Whether "the patentee will be *unduly prejudiced* by a stay . . . focuses on the patentee's need for an expeditious resolution of its claim." *VirtualAgility*, 759 F.3d at 1318 (emphasis in original). "A stay will not diminish the monetary damages to which [the patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy." *Id.* And "'mere delay does not rise to the level of undue prejudice.'" *ACQIS*, 109 F. Supp. 3d at 358 (quoting *SurfCast*, 2014 WL 6388489, at *3). While "competition between parties can weigh in favor of finding undue prejudice," there must at least be circumstantial evidence that the two parties are competitors. *VirtualAgility*, 759 F.3d at 1318.

Gratuity fails to identify any dilatory motive or tactical advantage on Toast's part for seeking this stay. Although Toast waited until the last day to file its IPR petition, *see* 35 U.S.C. § 315(b); ECF 100, ¶ 6; ECF 1, Toast filed this motion to stay only one week after PTAB instituted the IPR, *see* ECF 98; *Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, No. 3:15-cv-30005-MGM, 2016 WL 1735330, at *3 (D. Mass. Apr. 28, 2016) (finding no delay tactic where the alleged infringer "promptly filed its motion for a stay" less than two weeks after PTAB instituted the IPR).

Gratuity contends that a stay would cause undue prejudice because, as a direct competitor of Toast, it has lost 76 customers to Toast over the past two years, including four customers last week, and continues to lose customers at an increasing rate. ECF 106-2, ¶¶ 4-7. While such evidence is sufficient to establish at this early stage of the litigation that Gratuity and Toast are competitors, "at best," according to the Federal Circuit, "this factor weighs slightly against a stay."

9

*VirtualAgility*, 759 F.3d at 1320. Gratuity has not offered evidence, including, for example, information regarding its total number of customers, to adequately contextualize how this loss of customers has impacted its business. Nor has it demonstrated that its losses could not be addressed by money damages were it to ultimately succeed on its infringement or breach of contract claims, especially given that it would still be entitled to recover prejudgment interest as the prevailing party on the infringement claim. *See Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-cv-12029-ADB, 2019 WL 1767394, at *8 (D. Mass. Apr. 22, 2019) (citing *SCVNGR, Inc. v. eCharge Licensing, LLC*, No. 13-cv-12418-DJC, 2014 WL 4804738, at *9 (D. Mass. Sept. 25, 2014)); 35 U.S.C. § 284. As the Federal Circuit has emphasized, a stay merely delays, but does not diminish, any such damages. *VirtualAgility*, 759 F.3d at 1318. Additionally, Gratuity never sought a preliminary injunction, which undermines its claim of undue prejudice. *ACQIS*, 109 F. Supp. 3d at 358. "Although this is not dispositive," "the fact that it was not worth the expense to ask for this remedy . . . weigh[s] against [Gratuity's] claims that it will be unduly prejudiced by a stay." *VirtualAgility*, 759 F.3d at 1319. Accordingly, this factor, at most, marginally cuts against a stay.

In sum, the minimal prejudice stemming from the competition between Gratuity and Toast is insufficient, standing alone, to overcome the other two factors. *Id.* at 1320. This case remains at an early stage in the litigation. Since the only remaining patent is now subject to the IPR, the PTAB could reduce or resolve the patent issues here. Weighing all three factors, the Court concludes that a stay of this action pending completion of the PTAB's IPR proceeding is warranted.

## CONCLUSION AND ORDER

For the foregoing reasons, Toast's motion to stay pending *inter partes* review, ECF 98, is GRANTED. This action is stayed in its entirety until a decision is issued in the IPR proceeding.

The parties shall notify the Court within 14 days of the PTAB's decision, and the Court will then set a conference to address the schedule going forward.

    SO ORDERED.

Dated: April 24, 2024

/s/ Julia E. Kobick
Julia E. Kobick
United States District Judge