**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GRATUITY SOLUTIONS, LLC and GRATUITY, LLC,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>TOAST, INC.,<br><br>　　　　Defendant. | Civil Action No. 1:22-cv-11539-JEK |

**TOAST INC.'s ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT, COUNTERCLAIMS, AND JURY DEMAND**

Defendant Toast, Inc. (referred to herein as "Toast" or "Defendant"), by and through its undersigned attorneys, for its Answer and Affirmative Defenses to Plaintiffs' Gratuity Solutions, LLC and Gratuity, LLC's (referred to herein as "Gratuity" or "Plaintiffs") Second Amended Complaint ("SAC"), states as follows upon its knowledge of itself and information and belief as to all other allegations.

**NATURE OF THE ACTION**

1.　　Plaintiffs bring this action to recover damages for, and to stop, misappropriation of Plaintiffs' trade secrets and other confidential information that has occurred, and continues to occur, by certain of Toast's officers, directors, and/or members of its Customer Advisory Board(s), who obtained access to Plaintiffs' trade secrets and other confidential information pursuant to confidentiality agreements including, but not limited to, Plaintiffs' Joint User Agreement; and who have violated those agreements by then using, disclosing, and/or encouraging others to disclose Plaintiffs' protected trade secrets and other confidential information to Toast, which has used such misappropriated information to develop its own competing systems and Plaintiffs' business and business relationships, including the loss of approximately 100 customer locations to Toast.

**ANSWER**:  Toast admits that the SAC purports to state a claim for misappropriation of trade secrets and other confidential information.  Toast otherwise denies the allegations in this paragraph.

## THE PARTIES

2.      Plaintiff Gratuity Solutions, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200 Naples, FL 34105.

**ANSWER**:  Toast lacks sufficient knowledge or information to form a belief as to the allegations in this paragraph and on that basis denies them.

3.      Plaintiff Gratuity, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200 Naples, FL 34105.

**ANSWER**:  Toast lacks sufficient knowledge or information to form a belief as to the allegations in this paragraph and on that basis denies them.

4.      Defendant Toast, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 333 Summer Street, Boston, MA 02210. According to Toast's website, Toast sells and provides it restaurant management products and services throughout the United States, including in the State of Florida, and within this judicial district specifically, and has continuously and systematically availed itself of the privileges of doing business in the State of Florida for years, and has introduced and continues to introduce its products and services in Florida, and in this judicial district specifically. (*See* Ex. 1, https://pos.toasttab.com/local-partner-directory?type=florida&topic=#category-filter; Ex. 2, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy45NTE2ODk2LCJ1c2VyT G9uZyI6LTgyLjQ1ODc1MjY5OTk5OTk5LCJ1c2VyQ2l0eSI6IlRhbXBhIiwidXNlclN0YXRlIjo iRkwifQ%3D%3D&pg=1; Ex. 3, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy43NjcxMjcxLCJ1c2VyTG9 uZyI6LTgyLjYzODQ0NTEsInVzZXJDaXR5IjoiU3QuIFBldGVyc2J1cmciLCJ1c2VyU3RhdGU iOiJGTCJ9&pg=1; Ex. 4, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyOC41MzgzODMyLCJ1c2VyT G9uZyI6LTgxLjM3ODkyNjksInVzZXJDaXR5IjoiT3JsYW5kbyIsInVzZXJTdGF0ZSI6IkZMIn 0%3D&pg=1; Ex. 5, https://pos.toasttab.com/blog/savage-labs; Ex. 6, https://pos.toasttab.com/blog/buccan; Ex. 7, https://pos.toasttab.com/blog/on-the-line/how-to-start-a-food-business-from-home-in-florida; Ex. 8, https://pos.toasttab.com/blog/on-the-line/how-to-open-a-restaurant-in-florida; Ex. 9, https://pos.toasttab.com/blog/on-the-line/bar-licenses-and-permits-in-florida.) Upon information and belief, Toast employs, and has employed, various Account Executives throughout the State of Florida to help with the sale of its products and services in the State of Florida, (*See, e.g.*, Ex. 10, https://www.indeed.com/cmp/Toast,-

2

Inc/reviews?id=d1406f834116612e; Ex. 11, https://www.linkedin.com/jobs/view/lakeland-fl-territory-account-executive-at-toast-3920101973/; Ex. 12, https://www.linkedin.com/in/morgan-innes-2571542a/; Ex. 13, https://www.instagram.com/lifeattoast/p/CUDq9LbrKMN/; Ex. 14, https://www.zoominfo.com/p/Dennis-Madrid/3741392613;                    Ex.                    15, https://www.salary.com/job/toast/regional-vice-president-sales-florida/j202202151318289660996; Ex. 27, https://pos.toasttab.com/customers/swah-rey;.)

**ANSWER**:  Toast admits that Toast, Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 333 Summer Street, Boston, MA 02210. Toast admits that it sells and provides restaurant management products and services throughout the United States, including in the State of Florida.  Toast admits that it employs, and has employed, Account Executives residing in Florida.  Except as otherwise admitted, Toast denies the allegations in this paragraph.

**Toast's Customer Advisory Board**

5.        According to Toast's website, it also maintains an official Customer Advisory Board. (*See* Ex. 16, https://pos.toasttab.com/customer-advisory-board.) According to Toast, its official Customer Advisory Board is "composed of industry leaders from across the Toast customer network . . ." who "provide Toast with valuable insights to help guide the future of Toast . . ." and provide "insights and feedback that help inform our product roadmap . . . ." (*See* Ex. 17, https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members.)

**ANSWER**:  Toast admits that it maintains a Customer Advisory Board that is composed of industry leaders from across the Toast customer network and can be found at https://pos.toasttab.com/customer-advisory-board.  Toast further admits that it issued a press release announcing its 2024 Customer Advisory Board, which can be found at https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members,        and denies the allegations in this paragraph to the extent they are inconsistent with that press release. Further responding, the documents cited in this paragraph speak for themselves and Toast denies the allegations herein to the extent they are inconsistent with those documents.

6.        A number of present and former members of Toast's official Customer Advisory Board are, or were in the past, also customers of Plaintiffs, and as such, have had access to and have received Plaintiffs' trade secrets and other confidential information pursuant to various

confidentiality agreements including, but not limited to, Plaintiffs' Joint User Agreement, and specifically including the Confidentiality Provisions of Section 11, which survive that agreement. (*See* Ex. 18.) Among the Toast Advisory Board members that are, or were in the past, also customers of Plaintiffs, are:

- Joy Zarembka - COO, Busboys and Poets, Washington, DC;

- JT Riley- VP of Operations, Taste of Belgium, Cincinnati, OH;

- Andrei Stern- Co-Founder/CFO, SuViche Hospitality Group, Miami, FL;

- James Perry- Operational Systems Support Manager, José Andrés Group;

- Tyler Schack - VP of Technology, Walk-Ons Sports Bistreaux;

- John Shattinger- Vice President of Technology, Robeks;

- Jeremy Theisen- Chief Growth and Development Officer, Craveworthy Brands;

- Vinny Torregrossa - Senior Director of Technology, Nothing Bundt Cakes;

- Mike Bausch, Owner, Andolini's Pizzeria;

- Shandor Collins, Director of IT, Trapper's Sushi;

- Nick Sorise, Direction of Growth & Development, Parker Restaurant Group;

- Randy Barnett, VP of Innovative Technology, Systems & Data, Front Burner Brands;

- Sean Power, Director of IT, Ford Restaurant Group;

- Tiffany Saylor, Senior Director of IT, Front Burner Brands;

- John Schattinger, Vice President of Technology, Robeks.

**ANSWER**:  Toast lacks sufficient knowledge or information to form a belief as to the allegations in this paragraph and on that basis denies them.  Toast further specifically denies ever

4

receiving Plaintiffs' trade secrets or confidential information from any member of Toast's Customer Advisory Board.

7.      According to Toast's Customer Advisory Board website, Joy Zarembka ("Zarembka") has been the Vice President of Planning and Innovation for Busboys and Poets since 2014, and is also a member of Toast's Customer Advisory Board. (*See* https://pos.toasttab.com/customer-advisory-board; Ex. 20, https://www.busboysandpoets.com/.)

**ANSWER**:  Toast states that no response to this paragraph is required because the exhibit referenced speaks for itself.  To the extent a response is required, Toast denies the allegations in this paragraph to the extent they are inconsistent with that exhibit.

8.      On or about August 18, 2016, Zarembka was provided with Plaintiffs' offer to provide Busboys and Poets with gratuity management services "subject to the terms set forth" in Plaintiffs' Service Level and User Agreement. (*See* Ex. 21.)

**ANSWER**:  Toast lacks sufficient knowledge or information to form a belief as to the allegations in this paragraph and on that basis denies them.

9.      Since at least January 20, 2018, Busboys and Poets and all employees thereof, including Zarembka as Vice President of Planning and Innovation for Busboys and Poets, have been subject to the provisions of Plaintiffs' Joint User Agreement, including the Confidentiality Provisions of Section 11.

**ANSWER**:  Toast lacks sufficient knowledge or information to form a belief as to the allegations in this paragraph and on that basis denies them.

10.      According to Toast, its Customer Advisory Board is "composed of industry leaders from across the Toast customer network . . ." who "provide Toast with valuable insights to help guide the future of Toast . . ." and provide "insights and feedback that help inform our product roadmap . . . ." (*See* Ex. 17, https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members.)

**ANSWER**:  Toast admits that it issued a press release announcing its 2024 Customer Advisory Board, which can be found at https://pos.toasttab.com/news/toast-announces-2024-customer-advisory-board-members, and denies the allegations in this paragraph to the extent they are inconsistent with that press release.

5

11.     Upon information and belief, based on her access to Plaintiffs' trade secrets and other confidential information, at least Zarembka has been involved in the misappropriation of Plaintiffs' trade secrets and other confidential information, both in her capacity as a member of Toast's Customer Advisory Board and in her capacity as Vice President of Planning and Innovation for Busboys and Poets. Zarembka has admitted providing Toast with information to improve its products. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

**ANSWER**:  Denied.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims brought under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836.

**ANSWER**:  The allegations in this paragraph are legal conclusions to which no admission

or denial is necessary.

13.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER**:  The allegations in this paragraph are legal conclusions to which no admission

or denial is necessary.

14.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER**:  The allegations in this paragraph are legal conclusions to which no admission

or denial is necessary.

15.     Toast is subject to this Court's general personal jurisdiction based on its continuous and systematic availment of the privileges of doing business in the State of Florida, including regularly doing and soliciting business from customers in Florida, selling products and services to its customers throughout the State of Florida for years, and otherwise engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Florida. (*See* Ex. 1, https://pos.toasttab.com/local-partnerdirectory?type=florida&topic=#category-filter;          Ex.          2, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy45NTE2OD k2LCJ1c2VyTG9uZyI6LTgyLjQ1ODc1MjY5OTk5OTk5LCJ1c2VyQ2l0eSI6IlRhbXBhIiwidXN lclN0YXRlIjoiRkwifQ%3D%3D&pg=1;          Ex.          3, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyNy43NjcxMjcxLCJ1c2VyTG9 uZyI6LTgyLjYzODQ0NTEsInVzZXJDaXR5IjoiU3QuIFBldGVyc2J1cmciLCJ1c2VyU3RhdGU iOiJGTCJ9&pg=1;          Ex.          4, https://www.toasttab.com/local/search?filters=eyJ1c2VyTGF0IjoyOC41MzgzODMyLCJ1c2VyT

G9uZyI6LTgxLjM3ODkyNjksInVzZXJDaXR5IjoiT3JsYW5kbyIsInVzZXJTdGF0ZSI6IkZMIn 0%3D&pg=1; Ex. 5, https://pos.toasttab.com/blog/savage-labs; Ex. 6, https://pos.toasttab.com/blog/buccan; Ex. 7, https://pos.toasttab.com/customers/swah-rey; Ex. 8, https://pos.toasttab.com/blog/on-the-line/how-to-start-a-food-business-from-homein-florida; Ex. 9, https://pos.toasttab.com/blog/on-the-line/how-to-open-arestaurant-in-florida.) Upon information and belief, Toast employs, and has employed, a number of Account Executives throughout the State of Florida to help with the sale of its products and services in the State of Florida, (*See*, e.g., Ex. 10, https://www.indeed.com/cmp/Toast,-Inc/reviews?id=d1406f834116612e; Ex. 11, https://www.linkedin.com/jobs/view/lakeland-fl-territory-account-executive-attoast-3920101973/; Ex. 12, https://www.linkedin.com/in/morgan-innes-2571542a/; Ex. 13, https://www.instagram.com/lifeattoast/p/CUDq9LbrKMN/; Ex. 14, https://www.zoominfo.com/p/Dennis-Madrid/3741392613; Ex. 15, https://www.salary.com/job/toast/regional-vice-president-salesflorida/j202202151318289660996.) Alternatively, Toast is subject to this Court's specific personal jurisdiction based upon its misappropriation, use, and public dissemination of Plaintiffs' trade secrets within this District as set forth more fully herein.

**ANSWER**:  Denied.

16.     Venue is proper in this district because Toast is subject to general and/or specific personal jurisdiction in the State of Florida, and is thus a resident under 28 U.S.C. § 1391(c).

**ANSWER**:  Denied.

## BACKGROUND

**Toast's Confidentiality Obligations to Plaintiffs**

17.     Plaintiffs and Defendant Toast began their business interactions on or about August 2016 when Plaintiffs approached Toast to discuss building a solution to enable Toast Point-of-Sale customers to utilize the Plaintiffs' platform for gratuity distributions. Plaintiffs were put in touch with Ming-Tai Huh, who at the time, on information and belief, was responsible for Toast's partnerships and products.

**ANSWER**:  Toast lacks sufficient knowledge or information to form a belief as to the allegations in this paragraph and on that basis denies them.

18.     Plaintiffs and Defendant Toast entered into their first Non-Disclosure Agreement ("2016 NDA"), which was drafted by Defendant and signed by Mr. Huh, on or about August 29, 2016. A true and correct copy of this agreement is attached as Exhibit 22. Based on the 2016 NDA, Toast obtained access to some of Plaintiffs' trade secrets and other confidential information including certain technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development, and release plans; applications and/or methodologies for integrating and implementing such features sets and future features; work flows including

7

customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

**ANSWER**: Toast states that no response is required to this paragraph because the document referenced speaks for itself. To the extent a response is required, Toast denies the allegations in this paragraph.

19. From 2016 through the date of this filing, Toast lists Gratuity Solutions as an "Integration Partner" on their website and consistently refers customers and clients to Plaintiffs.

**ANSWER**: Toast admits that it has previously listed and continues to list Gratuity Solutions on its website on a page titled "Toast integrations." Except as otherwise admitted, Toast denies the allegations in this paragraph.

20. In late 2019, a business broker approached Toast on behalf of Plaintiffs to ask whether Toast would be interested in discussing acquiring Plaintiffs. Mr. Matthew Baumgartner, Toast's Principal of Corporate Development and Strategy, indicated that Toast would be interested and sent over a second NDA agreement ("2019 NDA") for both parties as part of discussions related to merger or acquisition of Plaintiffs by Toast. A true and correct copy of this agreement is attached as Exhibit 23. During the course of these negotiations, some of Plaintiffs' trade secrets and other confidential information were further disclosed to Toast including certain technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development and release plans; applications and/or methodologies for integrating and implementing such features sets and future features; work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

**ANSWER**: Toast admits that, in November 2019, Matthew Baumgartner, on behalf of Toast, engaged in discussions with David Levine regarding potentially acquiring Gratuity Solutions. Toast further states that no response to the allegations regarding the 2019 NDA is required because the document speaks for itself. Except as otherwise admitted, Toast denies the allegations in this paragraph.

21. After a January 14, 2020 call to discuss the possibility of acquiring Plaintiffs, Mr. Baumgartner emailed the business broker to indicate that Toast would not be moving forward with acquiring Plaintiffs, stating: "Right now we won't be able to go further in the M&A process but are excited to grow in our partnership with the team."

**ANSWER**:  Toast states that no response is required to this paragraph because the email referenced speaks for itself.  To the extent a response is required, Toast denies the allegations in this paragraph to the extent they are inconsistent with that email.

22.    Since at least 2016, Toast was generally aware of the functions, capabilities, and requirements of Plaintiffs' software as it was advertised as an integrated product on Toast's platform, and knew or should have known that certain information was not publicly known, including Plaintiffs' trade secrets and other confidential information including, for example, technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; general development information and plans including potential feature sets, feature development, and release plans; applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.

**ANSWER**:  Denied.

23.    During the business relationship between Toast and Plaintiffs, Toast was aware or should have been aware of the confidentiality restrictions Plaintiffs placed on access to and use of their trade secrets and other confidential information, both with respect to Toast and Plaintiffs' other customers.

**ANSWER**: Denied.

24.    On September 1, 2021, Plaintiffs reached out to Toast's General Counsel, Brian Elworthy, CEO Chris Comparato, and integrations lead Mr. Ming-Tai Huh to update them on Plaintiffs' performance and to invite them to re-engage in merger and acquisition discussions. No response from was received from Toast.

**ANSWER**:  Toast admits that it received an email from Carlo Zampogna, on behalf of Gratuity Solutions, on September 1, 2021.  Except as otherwise admitted, Toast denies the allegations in this paragraph, including, but not limited to, because the September 1, 2021 email speaks for itself.

25.    On or around November 16, 2021, Toast announced its own gratuity management solution entitled "Toast Tips Manager" which contained many of the specific features found in Plaintiffs' products, and which continues to add new features identified and developed by Plaintiffs.

**ANSWER**:  Toast admits that it announced the Toast Tips Manager on November 16, 2021. Except as otherwise admitted, Toast denies the allegations in this paragraph.

26. Despite Toast's general obligations of confidentiality owed to Plaintiffs, during these discussions regarding a potential acquisition, at no time was Toast provided access to Plaintiffs' PayDayPortal system, including any of the specific trade secrets that have been made available over time to users who have agreed to abide by Plaintiffs' Joint User Agreement. Toast has certainly never been authorized to access Plaintiffs' PayDayPortal system or access any of the trade secrets contained therein for product features developed and introduced since the introduction of Toast's competing Toast Tips Product.

**ANSWER**: Toast admits that it has not accessed Plaintiffs' PayDayPortal system. Except as otherwise admitted, Toast denies the allegations in this paragraph.

**The Massachusetts Action**

27. On September 19, 2022, Plaintiffs filed suit against Toast for patent infringement of U.S. Patent No. 9,741,050 ("the '050 patent"), in the U.S. District Court for the District of Massachusetts. (*See Gratuity Solutions, LLC and Gratuity, LLC v. Toast, Inc.*, Civ. Action No. 1:22-cv-11539 (D. Mass.) ("the Patent action").).

**ANSWER**: Admitted.

28. The Patent action consists of two causes of action: (1) infringement of the '050 patent's claimed gratuity management system; and (2) breach of contract with respect to Toast's breach of the two NDAs Toast entered into with Plaintiffs during potential acquisition discussions. There are no allegations in the Patent action relating to trade secret misappropriation by Toast or any members of its Customer Advisory Board, such as Zarembka.

**ANSWER**: Toast admits that the Patent action, as defined in Paragraph 27, alleges two causes of action for (1) alleged infringement of the '050 patent's claimed gratuity management system; and (2) alleged breach of contract with respect to Toast's breach of the two NDAs. Except as otherwise admitted, Toast denies the allegations in this paragraph.

29. A patent protects inventions that are required to be publicly disclosed and claimed in the patent, whereas trade secret inherently protect only valuable information that is maintained in confidence, and as such, these distinct methods of protecting intellectual property do not conflict. *See Kewanee v. Bicron*, 460 U.S. 470, 484 (1974) ("Certainly the patent policy of encouraging invention is not disturbed by the existence of another form of incentive to invention. In this respect the two systems are not and never would be in conflict.").

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Toast denies the allegations in this paragraph.

30.     Accordingly, the Massachusetts Patent action has **no** allegations regarding: (1) misappropriation of Plaintiffs' trade secrets including features implemented and configured through Plaintiffs' PayDayPortal system; or (2) any conspiracy to access and misappropriate Plaintiffs' trade secrets through members of Toast's Customer Advisory Board.

**ANSWER**:  Denied.

31.     The Patent action is still pending, but the Massachusetts district court stayed that action after the U.S. Patent and Trademark Office ("USPTO") granted Toast's September 19, 2023, Petition for Inter Partes Reexamination ("IPR") of the '050 patent. The IPR is also still pending as the USPTO reconsiders the validity of the '050 patent. A decision is not expected until 2025, and until that decision issues, the Patent action is stayed preventing Plaintiffs from pressing their infringement claims against Toast until the USPTO issues its Final Written Decision[1] and the district court in Massachusetts lifts the stay.

**ANSWER**:  Toast admits that the Patent action is still pending and that the Massachusetts district court previously stayed that action after the U.S. Patent and Trademark Office ("USPTO") granted Toast's September 19, 2023, Petition for *Inter Partes* Reexamination ("IPR") of the '050 patent.  Except as otherwise admitted, Toast denies the allegations in this paragraph.

32.     Although the '050 patent generally discloses the capabilities of the patented system—namely the specific hardware components of the gratuity management system and examples of its general capabilities for providing customers with a remote management system depending on their varied needs, the '050 patent does not and cannot disclose the specific trade secrets found in Plaintiffs' PayDayPortal system.

**ANSWER**:  Denied.

33.     Many of the features on Plaintiffs' PayDayPortal system were not even developed, let alone available on its PayDayPortal system, until well after Plaintiffs filed their application for the '050 patent.

**ANSWER**:  Toast lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies the allegations.

34.     Notably, while the '050 patent's system requires use of an "interface"—also referred to as the "gratuity sync application" which is a combination of software and/or hardware that may be configured in any number of ways depending on each customer's specific system requirements—the specific details of how to configure that interface and the "recipes" used to

---

[1]  The USPTO is statutorily required under 35 U.S.C. § 326(a)(11), to issue its Final Written Decision within one year of its March 27, 2024 Decision Instituting IPR2023-01408.

11

implement those features as found in Plaintiffs' PayDayPortal system are not disclosed in the '050 patent.

**ANSWER**: Denied.

35.    During the Patent action, Toast argued, *inter alia*, that certain of the asserted '050 patent claims are "indefinite" for failing to disclose these specific configurations of Plaintiffs' "gratuity sync application" interface. (*See* Ex. 26, D.I. 82-1.)

**ANSWER**:    Toast states that no response is required to this Paragraph because the document referenced speaks for itself.    To the extent a response is required, Toast denies the allegations in this paragraph.

36.    Plaintiffs maintain in the Patent action that disclosure of such configuration information for its interface is not necessary because the patent claims are broadly directed to *systems* where the interface may be configured in any number of ways depending on each customer's specific system requirements as well as their customized "gratuity distribution rules" which can be tailored depending on each customer's specific needs. Indeed, the specific information regarding configuration of Plaintiffs interface are maintained as trade secrets by Plaintiffs.

**ANSWER**: Denied.

**Toast's Misappropriation of Plaintiffs' Trade Secrets**

37.    Beginning in approximately 2022, Plaintiffs began noticing that Toast's competing Tips Manager product had started offering certain features resembling those only available to Plaintiffs' customers through its PayDayPortal system, access to which is restricted to Plaintiffs' customers who have agreed to abide by Plaintiffs' Joint User Agreement (Ex. 18).

**ANSWER**: Toast lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that "[b]eginning in approximately 2022, Plaintiffs began noticing," and on that basis denies the allegations.    Toast otherwise denies the allegations in this paragraph.

38.    Plaintiffs suspected misappropriation of its trade secrets from a customer, as Toast was not a customer of Plaintiffs, and as such did not have an account and had never signed Plaintiffs' Joint User Agreement, and was never authorized to access any information on Plaintiffs' confidential PayDayPortal system, including its trade secrets and other confidential information.

**ANSWER**: Toast lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph to the extent the allegations are related to what Plaintiffs may or may not have "suspected" and on that basis denies the allegations. Toast admits that it never signed Plaintiff's Joint User Agreement but otherwise denies the remaining allegations in this paragraph.

39.    Moreover, since the stay of the Patent action, Plaintiffs' co-founder, Chief Information Officer, and inventor of the '050 patent, Aleksandar Stepanovich, has noticed that Toast's Tips Manager product has begun offering more feature sets that are nearly identical to those found in Plaintiffs' commercial product and only available through its confidential PayDayPortal system. In addition to their similarity in function and configuration, the speed with which Toast introduced these features for its competing product leads Plaintiffs to believe that Toast has, and continues to, misappropriated Plaintiffs' confidential trade secrets to develop its competitive products while the Patent action remains stayed.

**ANSWER**: Toast lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph to the extent the allegations are related to what Aleksander Stepanovich may or may not have "noticed" and on that basis denies the allegations. Toast otherwise denies the remaining allegations in this paragraph.

40.    More importantly, however, the configurations of Plaintiffs' interface, including the implementation of specific features, include customer-specific "recipes" used depending on each customer's specific equipment, requirements, needs, and preferences, are all trade secrets maintained in confidence, including through Plaintiffs' Joint User Agreement. These confidential details on how to implement Plaintiffs' software solutions is highly valuable because the information identifies how Plaintiffs have implemented specific features that were identified by Plaintiffs as valuable to their customers, and which were developed by Plaintiffs to address those customers' needs. Had Toast developed these features independently, it is unlikely that they would use nearly identical terminology, definitions, work-flows and ordering of configuration steps as found in Gratuity Solutions' PayDayPortal system.

**ANSWER**: Toast lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph to the extent the allegations are related to what Aleksander Stepanovich may or may not have "noticed" and on that basis denies the allegations. Toast otherwise denies the remaining allegations in this paragraph.

41.     Also following the stay of the Patent Action, and further confirming Plaintiffs' suspicions that Toast was obtaining and misappropriating Plaintiffs' trade secrets to provide additional features in its competing Toast Tips Manager product, on or about July 17, 2024, Plaintiffs discovered that Toast had begun actually publishing Plaintiffs' trade secrets on Toast's public website. Plaintiffs, including Mr. Stepanovich, reviewed many of Toast's website URLs, and produced a detailed listing of features from Toast's Tips Manager public website, and Plaintiffs' feature sets made available to Plaintiffs' customers pursuant to the confidentiality provisions of the Joint User Agreement (Ex. 18), and which include Plaintiffs' trade secrets and other confidential information. (*See* Ex. 29 (pending motion to file under seal).)

**ANSWER**:  Toast lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in this paragraph to the extent the allegations are related to what Plaintiffs may

or may not have "discovered" and/or "reviewed" and on that basis denies the allegations.  Toast

otherwise denies the remaining allegations in this paragraph.

42.     Importantly, the trade secrets provided in Exhibit 29 are being provided under seal so that the court can review Plaintiffs' non-public trade secrets which appeared on the competing Toast Tips Manager public website, where Toast published information on its nearly identical features that included Plaintiffs' trade secrets. The instructional videos, in particular, as set forth in Exhibit 29, involved more than mere disclosure of Plaintiffs' trade secrets—they actually provide the public with detailed "how-to" instructions to design and implement a gratuity management system using Plaintiffs' confidential and proprietary trade secrets and know-how, which further damages Plaintiffs and their business operations.

**ANSWER**:  Denied.

**Joy Zarembka's Obligations to Maintain Plaintiffs' Confidential Information**

43.     On or about August 18, 2016, Zarembka of Busboys and Poets was provided with Plaintiffs' offer to provide Busboys and Poets with gratuity management services "subject to the terms set forth" in Plaintiffs' Service Level and User Agreement. Zarembka was therefore aware of, or should have been aware of, Busboys and Poets' continuing obligations to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information.

**ANSWER**:  Toast lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in this paragraph, and on that basis denies the allegations.

44.     Since at least January 20, 2018, Busboys and Poets and all its employees, including Zarembka, owed Plaintiffs a duty not to misappropriate Plaintiffs' trade secrets and other confidential information based on the signing of, and agreement to abide by, Plaintiffs' Joint User Agreement, including the Confidentiality provisions of Section 11.

**ANSWER**: Toast lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis denies the allegations.

45.     Plaintiffs' Joint User Agreement sets forth in Section 11, the Confidentiality provisions that users agree to when they sign or accept the terms of the Joint User Agreement, which reads:

## 11. Confidentiality

a.      You agree to not use any technical information, financial information, designs, work flows, software, user interfaces, marketing designs or materials, operational methods, product development plan and techniques, data, computer programs, systems, software, source code, object code, hardware systems, mask words databases, financial information, customer information, legal or litigation information and strategy, pricing information or terms of contracts, or any other similar or related information developed or possessed by GS, including, without limitation, trade secrets as defined under Applicable Law, relating to the Services, to GS or GS's business, operations or real or intellectual properties (collectively, "**Confidential Information**") disclosed to You by GS or learned by You through Your use of the Services for any purpose other than the limited purposes set forth in the Agreement.  You shall not disclose or permit disclosure of any Confidential Information to any third party.  You shall take all reasonable measures to protect the secrecy of the Confidential Information of GS, and prevent it from falling into the public domain.

**ANSWER**:  Toast states that no response is required to this paragraph because the document referenced speaks for itself.  To the extent a response is required, Toast denies the allegations in this paragraph.

46.     Plaintiffs have consistently maintained the secrecy of their trade secrets and other confidential information by taking precautions not to disseminate such information to the public, such as by conditioning any access to such trade secret and other confidential information through contractual provisions of various agreements such as the non-disclosure agreements entered into with Toast, and Plaintiffs' Joint User Agreements with its customers including, but not limited to, Busboys and Poets, including Section 11's Confidentiality provision, which survives any agreement with a customer.

**ANSWER**: Denied.

47.     Despite Plaintiffs' efforts, upon information and belief, Toast has used members of its Customer Advisory Board, including at least Zarembka, to access, obtain, improperly use, and now disseminate without authorization, Plaintiffs' valuable and confidential trade secrets thus damaging Plaintiffs and their business operations.

**ANSWER**: Denied.

**COUNT I – MISAPPROPRIATION OF TRADE SECRETS
UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. S 1836)**

48.     The allegations set forth in the foregoing paragraphs 37-48 are incorporated into this First Claim for Relief.

**ANSWER**:  Defendant reaffirms and incorporates by reference its responses to Paragraphs 1 through 47 as if set forth fully herein.

49.     Plaintiffs own various trade secrets and other confidential information related to and embodied in their gratuity management products and services sold in interstate commerce throughout the United States, including at least its PayDayPortal system which includes, for example, technical and/or financial information related to, for example, certain business plans and strategies, customer lists and preferences, development information and plans including feature sets and feature development and release plans, applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information, system architectures and interfaces, and associated source code.

**ANSWER**:  Denied.

50.     Plaintiffs have historically taken various measures to maintain the secrecy of their trade secrets from the public, including restricting access to such information and through the use of user accounts and passwords, two-tier authentication, encryption, and non-disclosure agreements and other agreements, such as Plaintiffs' Joint User Agreements, to notify persons with access to Plaintiffs' trade secrets and other confidential information of their duties and obligations to maintain the secrecy and confidentiality of that confidential information.

**ANSWER**:  Denied.

51.     Plaintiffs' trade secrets and other confidential information related to their commercial products and services used in interstate commerce have been and continue to be misappropriated by Toast through improper means in violation of 18 U.S.C. § 1836, including through certain members of Toast's Customer Advisory Board who entered into agreements with Plaintiffs to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information including, but not limited to, Plaintiffs' Joint User Agreement, and thereafter breached their obligations and duties to protect Plaintiffs' trade secrets and other confidential information under that agreement by providing such trade secrets and other confidential information to Toast.

**ANSWER**:  Denied.

52.     Upon information and belief, Toast obtained Plaintiffs' trade secrets and other confidential information through at least the actions of Zarembka, a former customer of Plaintiffs who, while acting in both her capacity as a member of Defendant Toast's Customer Advisory Board and as Vice President of Planning and Innovation for Busboys and Poets, admittedly provided information to Toast that Plaintiffs believe violated her obligations and duties under Plaintiffs'

16

Joint User Agreement, including the Confidentiality Provisions of Section 11 and provided such information to Toast. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

**ANSWER**: Denied.

53.     Upon information and belief, Toast has never been authorized to access Plaintiffs' confidential PayDayPortal system, has never agreed to abide by Plaintiffs' Joint User Agreement, and would have not been able to offer the nearly identical features now available on its Toast Tips Manager product without misappropriating Plaintiffs' trade secrets.

**ANSWER**: Toast admits that it has never accessed Plaintiffs' PayDayPortal system or agreed to abide by Plaintiff's Joint User Agreement.  Toast otherwise denies the remaining allegations in this paragraph.

54.     Toast was aware of, should have been aware of, or was otherwise willfully blind to, provision of Plaintiffs' trade secrets and other confidential information by any member of its Customer Advisory Board in violation of any duties and obligations to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information pursuant to Plaintiffs' Joint User Agreement and the Confidentiality Provisions of Section 11, including at least Zarembka, who obtained access to Plaintiffs' trade secrets through her position with Busboys and Poets, which agreed to Plaintiffs' Joint User Agreement.

**ANSWER**: Denied.

55.     Toast's misappropriation of Plaintiffs' trade secrets and other confidential information was willful and malicious as Toast knew of, should have known of, or was otherwise willfully blind to, at least Zarembka's disclosure and use of Plaintiffs' trade secrets and other confidential information in violation of the duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including the Confidentiality Provisions of Section 11. Plaintiffs' business has been, and continues to be, damaged by Toast's misappropriation and unauthorized use and publication of Plaintiffs' trade secrets and other confidential information.

**ANSWER**: Denied.

**COUNT II – TRADE SECRET MISAPPROPRIATION
UNDER FLORIDA'S UNIFORM TRADE SECRETS ACT**

56.     The allegations set forth in the foregoing paragraphs 37 through 56 are incorporated into this Second Claim for Relief.

**ANSWER**: Defendant reaffirms and incorporates by reference its responses to Paragraphs 1 through 55 as if set forth fully herein.

57.    Plaintiffs own various trade secrets and other confidential information related to and embodied in their gratuity management products and services sold in interstate commerce throughout the United States, for example, technical and/or financial information related to, for example, certain business plans and strategies, customer lists and preferences, development information and plans including feature sets and feature development and release plans, applications and/or methodologies for integrating and implementing such features sets and future features, work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information, system architectures and interfaces, and associated source code.

**ANSWER**:  Denied.

58.    Plaintiffs have historically taken various measures to maintain the secrecy of their trade secrets from the public, including restricting access to such information by requiring user accounts and passwords, two-tier authentication, encryption, and through the use of non-disclosure agreements and other agreements, such as Plaintiffs' Joint User Agreements, to notify persons with access to Plaintiffs' trade secrets and other confidential information of their duties and obligations to maintain the secrecy and confidentiality of that confidential information.

**ANSWER**:  Denied.

59.    Plaintiffs' trade secrets and other confidential information related to their commercial products and services used in interstate commerce have been and continue to be misappropriated by Toast through improper means in violation of the Florida's Uniform Trade Secrets Act, Fla. Stat. §688.001 et seq., including through certain members of Toast's Customer Advisory Board who entered into agreements with Plaintiffs to maintain the confidentiality of Plaintiffs' trade secrets and other confidential information including, but not limited to, Plaintiffs' Joint User Agreement, and thereafter breached their obligations and duties to protect Plaintiffs' trade secrets and other confidential information under that agreement by providing such trade secrets and other confidential information to Toast.

**ANSWER**:  Denied.

60.    Upon information and belief, at least through Zarembka's activities as both Vice President of Planning and Innovation for Busboys and Poets, and her capacity as a member of Toast's Customer Advisory Board, Plaintiffs' trade secrets and other confidential information were provided to Toast, in violation of her obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement with Busboys and Poets, including Section 11's Confidentiality Provision. (*See, e.g.*, Ex. 25, https://www.youtube.com/watch?v=-hu71rRbVCA.)

**ANSWER**:  Denied.

61.    Toast was aware of, should have been aware of, or was otherwise willfully blind to any member of its Customer Advisory Board's provision of Plaintiffs' trade secrets and other confidential information to Toast, including at least Zarembka, in violation of their obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement, such as Busboys and Poets, including Section 11's Confidentiality Provision.

18

**ANSWER**:  Denied.

62.    Defendants' misappropriation of Plaintiffs' trade secrets and other confidential information was willful and malicious in that Toast knew of, should have known of, or was otherwise willfully blind to any member of Toast's Customer Advisory Board member's disclosure of Plaintiffs' trade secrets and other confidential information, including at least Zarembka, in violation of their obligations and duties owed to Plaintiffs under Plaintiffs' Joint User Agreement, including Zarembka's obligations through Busboys and Poets, including Section 11's Confidentiality Provision.

**ANSWER**:  Denied.

63.    Plaintiffs' business has been, and continues to be, damaged by Toast's misappropriation and unauthorized use of Plaintiffs' trade secrets and other confidential information.

**ANSWER**:  Denied.

## COUNT III – CIVIL CONSPIRACY TO MISAPPROPRIATE PLAINTIFFS' TRADE SECRETS

64.    The allegations set forth in the foregoing paragraphs 37 through 64 are incorporated into this Third Claim for Relief.

**ANSWER**:  Defendant reaffirms and incorporates by reference its responses to Paragraphs

1 through 63 as if set forth fully herein.

65.    Plaintiffs' trade secrets and other confidential information were misappropriated via an understanding among Toast and certain members of its Customer Advisory Board, to misappropriate Plaintiffs' trade secrets and other confidential information on behalf of Toast including, but not limited to, Zarembka's Agreement with Busboys and Poets, including Section 11's Confidentiality Provision, thereby damaging Plaintiffs' business.

**ANSWER**:  Denied.

66.    Toast knew, should have known, or was willfully blind to, the unauthorized use, dissemination, and disclosure of Plaintiffs' trade secrets and other confidential information by any member of its Customer Advisory Board was in breach of the duties and obligations owed to Plaintiffs, including under the Joint User Agreement between Plaintiffs and certain members of Toast's Customer Advisory Board including, but not necessarily limited to, Zarembka via Busboys and Poets.

**ANSWER**:  Denied.

67.    Toast's allowing members of its Customer Advisory Board to misappropriate Plaintiffs trade secrets and other confidential information has damaged and continues to damage Plaintiffs business and business relationships.

**ANSWER**:  Denied.

68.    By allowing and/or encouraging members of its Customer Advisory Board to breach their obligations and duties to protect Plaintiffs' trade secrets and other confidential information, such as pursuant to Plaintiffs' Joint User Agreement, and/or by failing to prevent such unauthorized disclosure, Toast is liable for damages caused by the conspiracy to misappropriate Plaintiffs' trade secrets and other confidential information.

**ANSWER**:  Denied.

## COUNT IV – INTENTIONAL INTERFERENCE WITH A CONTRACT

69.    The allegations set forth in the foregoing paragraphs 37 through 69 are incorporated into this Fourth Claim for Relief.

**ANSWER**:  Defendant reaffirms and incorporates by reference its responses to Paragraphs 1 through 68 as if set forth fully herein.

70.    Toast knew or should have known that certain members of its Customer Advisory Board were under obligations and duties to protect Plaintiffs trade secrets and other confidential information including, but not necessarily limited to, Zarembka who was subject to the Joint User Agreement between Plaintiffs and Busboys and Poets, including Section 11's Confidentiality provision.

**ANSWER**:  Denied.

71.    Toast encouraged members of its Customer Advisory Board including, but not necessarily limited to, Zarembka, to breach her duties and obligations to protect Plaintiffs' trade secrets and other confidential information, such as those under the Joint User Agreement between Plaintiff and Busboys and Poets, including Section 11's Confidentiality provisions, thereby interfering with Plaintiffs' contracts with its customers.

**ANSWER**:  Denied.

72.    Toast's interference with Plaintiffs' contracts with its customers, including the confidentiality provisions of Plaintiffs' Joint User Agreement, has damaged and continues to damage Plaintiffs in an amount to be determined at trial.

**ANSWER**:  Denied.

## PRAYER FOR RELIEF

**ANSWER**:  Toast denies all of the allegations contained in the Prayer for Relief of the SAC and denies that Gratuity is entitled to any of the relief requested therein or to any other relief whatsoever from Toast.

## AFFIRMATIVE DEFENSES

Toast asserts the following defenses with respect to the causes of action alleged in the SAC, without assuming the burden of proof or persuasion where such burden rests on Gratuity.  Toast reserves the right to supplement its defenses and/or raise any additional defenses that may become available or appropriate.

### First Affirmative Defense

Gratuity's SAC, and each count of the SAC, fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Gratuity's claims based on alleged misappropriation of trade secrets are barred because Gratuity has failed to identify any specific legally protected trade secrets.

### Third Affirmative Defense

Gratuity's claims based on alleged misappropriation of trade secrets are barred because Gratuity has not exercised reasonable or sufficient efforts to keep the information secret.

### Fourth Affirmative Defense

Gratuity's claims based on alleged misappropriation of trade secrets are barred because the alleged secrets are publicly available, readily ascertainable, and/or independently known or developed by Toast, and do not constitute trade secrets belonging to Gratuity.

**Fifth Affirmative Defense**

Gratuity's claims based on alleged misappropriation of trade secrets are barred because Toast did not misappropriate any trade secrets of Gratuity or acquire any alleged trade secrets through improper means.

**Sixth Affirmative Defense**

Gratuity's claims based on alleged misappropriation of trade secrets are barred because the alleged trade secrets lack independent economic value.

**Seventh Affirmative Defense**

Gratuity's claims are barred, in whole or in part, under the doctrines of unclean hands, waiver, laches, and/or estoppel.

**Eighth Affirmative Defense**

Gratuity's claims are barred, in whole or in part, because Gratuity has not suffered harm and any claimed damages are speculative and uncertain.

**Ninth Affirmative Defense**

Gratuity's damages, if any, were the result of one or more intervening and superseding causes, or caused by the acts and/or failures of persons and/or entities other than Toast and were not the result of any act or omission on the part of Toast.

**Tenth Affirmative Defense**

Gratuity's claims for equitable relief are barred because Gratuity has adequate remedies at law.

**Eleventh Affirmative Defense**

Gratuity's claims are barred, in whole or in part, because its alleged damages were directly and proximately caused and contributed to by the carelessness and/or negligence of Gratuity.

**Twelfth Affirmative Defense**

Gratuity's claims are barred, in whole or in part, because its alleged damages were not directly or proximately caused or contributed to by Toast.

**Thirteenth Affirmative Defense**

Gratuity's claims are barred, in whole or in part, by Gratuity's failure to mitigate any alleged losses.

**Fourteenth Affirmative Defense**

Gratuity is not entitled to exemplary or punitive damages because Toast has not engaged in any conduct that meets the applicable standard for exemplary or punitive damages.

**Fifteenth Affirmative Defense**

Gratuity's claims based on alleged misappropriation of trade secrets under the Florida Uniform Trade Secrets Act are barred in whole because the acts giving rise to the alleged misappropriation did not occur in Florida and Florida law does not otherwise apply.

**Sixteenth Affirmative Defense**

Gratuity's claims are time-barred, in whole or in part, by the applicable statute of limitations.

**Reservation of Affirmative Defenses**

Toast reserves the right to amend its Answer to the SAC by adding defenses, affirmative defenses, counterclaims in reply, and/or cross-claims, as additional facts are obtained through discovery.

**<u>JURY DEMAND</u>**

Toast hereby demands a trial by jury on all claims and issues so triable.

23

## COUNTERCLAIMS

Without admitting any of Plaintiffs' allegations other than those expressly admitted herein, and without prejudice to the right to plead additional facts, theories, defenses, and counterclaims as the facts of the matter warrant, Toast hereby asserts the following counterclaims against Gratuity. All allegations are made on information and belief except where otherwise indicated. Toast incorporates the statements in all the foregoing paragraphs as if fully set forth herein. By virtue of stating these counterclaims, Toast does not waive, and expressly preserves, all defenses.

## THE PARTIES

1.      Counterclaim Plaintiff Toast, Inc. ("Toast") is a corporation organized under the laws of the State of Delaware with a principal place of business at 333 Summer Street, Boston, MA, 02210.

2.      Toast has built a restaurant technology platform, which provides a variety of technological solutions to the restaurant industry. Included in part of its platform is Toast Tips Manager, Toast's independently developed software that assists users in the management of gratuities earned by its employees.

3.      Counterclaim Defendant Gratuity Solutions, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200, Naples, FL 34105.

4.      Counterclaim Defendant Gratuity, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200, Naples, FL 34105.

5.      Counterclaim Defendants Gratuity Solutions, LLC and Gratuity, LLC (collectively, "Gratuity") purport to provide a platform to process payroll.

24

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1332, 2201, and 2202 and supplemental jurisdiction under 28 U.S.C. § 1367(a).

7.     The Court has personal jurisdiction over Gratuity because Gratuity conducts extensive, continuous, and systemic business activities in this District and has pursued claims against Toast in this District.

8.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), and by virtue of Gratuity's choice of forum in filing their complaint against Toast.  A substantial part of the events giving rise to this claim occurred in this judicial district, including harm to Toast as a result of Gratuity's anticompetitive and vexatious litigation.

9.     Because of Gratuity's complaint against Toast, there now is an actual, substantial, continuing, and justiciable controversy between the parties as to the alleged misappropriation of Gratuity's confidential information.

## STATEMENT OF FACTS

### A.  Toast and Its Development of Toast Tips Manager

10.     Toast is a Massachusetts-based company that sells a restaurant management platform that combines point of sale, hardware, software, and payment processing systems in a single suite of products, and offers its software across the entire restaurant ecosystem, including online ordering, inventory management, payroll, HR management, and analytics.

11.     Toast also provides application program interfaces (APIs) that allow third-party partners to ingest data generated by Toast products into the third-party's pre-existing platforms. The APIs do not allow Toast to access the third-party's information but rather provide Toast's information to the third party.

12. At least as early as 2019, Toast identified an opportunity for a product that could address a variety of unique needs, including the ability of Toast's customers to use data already collected by Toast's then-existing product offerings to pool, allocate, and distribute tips. Rather than leverage or purchase an existing product offering, Toast decided to develop its own platform for gratuity management, referred to as Toast Tips Manager.

13. By 2019, methods for calculating, pooling, and distributing tips were well-known in the restaurant industry and publicly disclosed. Several patents had issued and were in the public domain claiming methods or products relating to gratuity management, including but not limited to U.S. Patent Application No. 2008/0065396 (Marshall) and U.S. Patent Application Publication No. 2014/0365322 (Phillips). Additionally, third-party software for gratuity management was publicly available, including the Evention system, GraTrack Tip Software, and Heartland Tip Manager.

14. Toast independently developed Toast Tips Manager from the ground up, which required several years of development work and coding. No member of the team that developed Toast Tips Manager had access to any product or service offered for sale by Gratuity, including PayDayPortal.

15. Toast began beta testing Toast Tips Manager in late 2019 and, through 2020, approximately 100 customers participated in the beta testing phase for Tips Manager.

16. Toast made Toast Tips Manager available for widespread public use by November 16, 2021.

17. Toast continues to make enhancements to Toast Tips Manager in response to customer feedback and ideas brainstormed by Toast team members.

B. **Toast's Customer Advisory Board**

18.     Toast maintains a Customer Advisory Board (CAB), which is a group of approximately 20 restaurant entrepreneurs in Toast's customer networks who provide industry and customer insights to guide the future of Toast and the restaurant community.

19.     The CAB meets roughly four times per year.  These meetings primarily focus on hearing from CAB members about their ongoing challenges in the restaurant industry and getting feedback on certain tools and solutions Toast is developing.

20.     CAB members are not paid for their services, although Toast covers travel costs for CAB members to attend CAB meetings and provides members with Toast-branded materials, giveaways, and discounts.

21.     During CAB meetings, one or more Toast employees takes notes of the topics discussed and issues raised.  The notes are then compiled into detailed meeting minutes.  Gratuity and/or PayDayPortal are not referenced in any of these minutes.  The meeting minutes contain only one reference to Toast Tips Manager in reference to two customers' potential use of the product.

C. **Gratuity, PayDayPortal, and Gratuity's Relationship with Toast**

22.     Gratuity is a Florida-based company that provides a gratuity allocation software known as PayDayPortal.

23.     Gratuity owns two patents relating to its PayDayPortal, U.S. Patent Nos. 9,741,050 and 10,726,436, which issued from a patent application published in 2014.  The specification of these patents disclose much of what was well-known at the time regarding gratuity management, including the concept of gratuity pooling among groups of servers, interfacing gratuity management systems with payroll, and allocation of gratuity based on the number of hours a

27

particular employee works in a particular role.  Both patents have since been held invalid under 35 U.S.C. § 101 as being directed to patent ineligible subject matter.

24.    On or around August 1, 2016, Gratuity "approached Toast to discuss building a solution to enable Toast Point-of-Sale customers to utilize the [Gratuity's] platform for gratuity distributions."  Docket No. 50, ¶ 17.

25.    On or around September 26, 2016, Gratuity and Toast executed a Statement of Work to build an Application Program Interface (API) that would allow Toast customers who use Gratuity software to move point of sale and payroll information from the Toast system to Gratuity's gratuity management software.

26.    U.S. Patent No. 9,741,050, assigned to Gratuity, issued on or around August 22, 2017.

27.    On November 20, 2019, David Levine at Corum Group, on behalf of Gratuity, sent an unsolicited email to the then-CEO of Toast, Christopher Comparato.  The subject of the email was "Acquisition Opportunity: Rapidly Growing Saas Payday Leader."  The following day, Toast responded to Mr. Levine's email attaching Toast's then-existing non-disclosure agreement, which was already signed by Toast and asked Mr. Levine to countersign.  Gratuity provided two documents containing high-level information about Gratuity.

28.    The two documents provided to Toast by Mr. Levine do not contain any Gratuity trade secrets.

29.    On January 13, 2020, Toast attended a video conference meeting with principals at Gratuity and Corum Group that lasted approximately an hour.  On January 16, 2020, Toast informed Mr. Levine that it was unable to go forward with an acquisition but was excited to continue their partnership through Toast's API.

30.     On September 1, 2021, Gratuity reached out to Toast again seeking to be acquired. *Id.* ¶ 24.  Toast did not respond.  *Id.*

31.     Although Toast did not acquire Gratuity, there remains an API integration between Toast and Gratuity, allowing Toast customers who use Gratuity software to move point of sale and payroll information from the Toast system to Gratuity's gratuity management software.

### D.  Gratuity's Litigation Tactics

32.     On September 30, 2022, Gratuity sued Toast in the District of Massachusetts, alleging infringement of U.S. Patent Nos. 9,741,050 and 10,726,436 and further alleging that Toast breached contractual obligations relating to a pair of non-disclosure agreements purportedly executed in 2016 and 2019 (the "Patent Case").

33.     On Toast's motion, on June 7, 2023, the Court dismissed the infringement claims as to U.S. Patent No. 10,726,436 on the ground that the patent was invalid under 35 U.S.C. § 101.

34.     On September 18, 2023, Toast petitioned for *inter partes* review ("IPR") of all claims in U.S. Patent No. 9,741,050 at the Patent Trial and Appeals Board ("PTAB").  The PTAB instituted an IPR on March 27, 2024.

35.     On April 3, 2024, Toast moved to stay the Patent Case in view of the IPR institution. Gratuity opposed the Motion.  On April 24, 2024,  the Court stayed the case in its entirety pending resolution of the IPR proceeding.

36.     Despite this Court's issuance of a stay of proceedings, and despite knowing that its remaining patent would likely be invalidated, Gratuity decided to file a suit based on nearly identical facts in the Middle District of Florida.  Instead of alleging breach of contract and patent infringement claims, Gratuity alleged misappropriation of trade secrets, civil conspiracy, and intentional interference with a contract.  Specifically, Gratuity now claimed that members of

Toast's CAB provided Toast with Gratuity's confidential information and purported trade secrets about Gratuity's PayDayPortal. Gratuity simultaneously filed an *ex parte* motion for a temporary restraining order.

37.    Even though the Parties were well-acquainted due to the Patent Case, Gratuity never reached out to Toast prior to filing this action in the Middle District of Florida or prior to seeking an *ex parte* temporary restraining order.

38.    In opposition to Gratuity's motion for a temporary restraining order, Toast provided declarations, sworn under the penalty of perjury, confirming that Toast independently developed Toast Tips Manager and that no member of Toast's CAB has ever provided Toast with any information regarding Gratuity or PayDayPortal. Toast also determined that many of Gratuity's alleged "trade secrets" were well-known industry standards, not subject to secrecy measures, and were even published in Gratuity's own patents. Despite Toast informing Gratuity of these facts, Gratuity chose to maintain this dispute.

39.    At the September 9, 2024 hearing on Gratuity's motion for a temporary restraining order, Gratuity's motive for filing this action became clear. Gratuity admitted to filing this action to obtain settlement leverage in the Patent Case. Specifically, counsel for Gratuity stated that "[o]nce the [Patent] case was stayed pending the IPR, there was some discussions between counsel as to whether or not there was any room for . . . an agreement to be reached, but it was pretty clear to us that given the IPR, our negotiating position was pretty weak and that it was not going to be a very favorable situation for us. So the dispute has continued." Docket No. 45 at 14:22–15:5.

40.    Judge Badalamenti denied the motion for a temporary restraining order, stating that many of the purported trade secrets were "publicly available on websites that [Gratuity] maintain[s]." Docket No. 42. Judge Badalamenti also noted that *ex parte* proceedings were

30

"inappropriate" and that any further motion for injunctive relief should only "be filed after carefully considering the purported misappropriation of trade secrets." *Id.*

41.    Despite Gratuity's knowledge that Toast independently developed Toast Tips Manager, that no CAB member provided Toast information about Gratuity or Gratuity's PayDayPortal, and that Gratuity did not own any recognizable trade secrets, on September 16, 2024, Gratuity filed a Second Amended Complaint.

42.    Although the Second Amended Complaint contained a new set of asserted "trade secrets," none of the information met the definition of a trade secret under the applicable statutes. The information Gratuity claimed as its trade secrets again was publicly available, not reasonably secured, and did not derive economic value from its secrecy.  Accordingly, on October 14, 2024, Toast moved to dismiss the Second Amended Complaint or in the alternative to transfer to the District of Massachusetts.

43.    Although Gratuity had filed its Second Amended Complaint more than a month earlier, and despite Judge Badalamenti's warning regarding any future requests for injunctive relief, Gratuity filed a motion for a preliminary injunction on October 18, 2024 – four days after Toast moved to dismiss this action.

44.    On February 28, 2025, Judge Mizell of the Middle District of Florida issued an order transferring the case to the District of Massachusetts.  Docket No. 85.  In transferring the case under the first-to-file doctrine, the court acknowledged the clear overlap between the cases, noting that "it is apparent from the complaints that there is indeed similarity and overlap . . . .  At the heart of each case is Toast's Tips Manager . . . [and] at bottom, the issue to be resolved in each case is whether Toast unlawfully used Gratuity's proprietary information or invention to develop its Tips Manager."  Docket No. 85 at 5.

45.    Gratuity filed Rule 72 Objections to the Order, Docket No. 86, which were overruled by Judge Badalamenti, Docket No. 88, and the case was transferred, Docket No. 89. After transfer, this Court denied Gratuity's pending motion for a preliminary injunction.  Docket No. 94.

46.    Gratuity's filing of this baseless action, because it was unhappy with the stay in the Patent Case and its poor settlement leverage, and its decision to continue to litigate this action, have significantly damaged Toast.  Toast has been forced to incur significant expenses to defend the litigation, including, but not limited to, attorneys' fees, expert fees, and costs associated with document collection and production.

## COUNT I: UNFAIR COMPETITION BY GRATUITY PURSUANT TO M.G.L. 93A

47.    Toast incorporates by reference the allegations contained in paragraphs 1 through 46 of these Counterclaims, as if fully set forth herein.

48.    Toast and Gratuity are both in the business of developing software for the restaurant industry, including software to manage the distribution of gratuities.

49.    Gratuity has engaged and continues to engage in unfair and deceptive methods of competition at least through willfully filing a baseless lawsuit against Toast and repeatedly asserting meritless claims of inventorship and ownership of algorithms to calculate gratuity distribution against Toast.

50.    Gratuity knew or should have known of the falsity of any claim that Toast or members of Toast's Customer Advisory Board misappropriated trade secrets claimed by Gratuity when bringing this litigation and consequently that its related tort claims for tortious interference and civil conspiracy predicated on the alleged misappropriation were also baseless.  Rather, counsel for Gratuity admitted at a court conference in the Middle District of Florida that it filed

32

this case not to win the lawsuit, but for the pernicious collateral purpose of gaining settlement leverage in the Patent Case.

51. Gratuity has engaged and continues to engage in an unfair method of competition by repeatedly and baselessly claiming Toast has misappropriated its alleged trade secrets. As part of this case alone, Gratuity has frivolously sought a preliminary injunction and a temporary restraining order against Toast, aggressively asserting trade secrets for the illegitimate and collateral purpose of inflicting harm and business disruption on Toast to further settlement leverage.

52. Gratuity has engaged in its unfair and deceptive method of competition willfully and knowingly.

53. Gratuity's unfair or deceptive acts or trade practices have occurred substantially in Massachusetts as described in the Second Amended Complaint, as well as Toast's counterclaims. By way of example, Gratuity has engaged with multiple conversations with Toast in Massachusetts in order to convince Toast to acquire Gratuity's business, and when this transaction did not come to fruition, Gratuity filed the Patent Case in Massachusetts, and Gratuity admitted that it filed this action to gain settlement leverage against Toast in the pending Patent Case.

54. Gratuity's activities have directly and proximately caused a loss of money or property to Toast, including expenses in defending itself in this abusive lawsuit, first in Florida and now in Massachusetts.

55. Gratuity's violation of M.G.L. Ch. 93A through its unfair or deceptive acts or trade practices was done willfully and/or knowingly and for a pernicious collateral purpose, thereby entitling Toast to enhanced damages and attorneys' fees and costs as permitted by M.G.L. Ch. 93A.

33

## COUNT II: ABUSE OF PROCESS BY GRATUITY

56.    Toast incorporates by reference the allegations contained in paragraphs 1 through 55 of these Counterclaims, as if fully set forth herein.

57.    On information and belief, Gratuity filed this suit for the ulterior and illegitimate purpose of disruption to Toast's business and to gain settlement leverage against Toast in the pending Patent Case, which purpose is collateral to the legitimate purpose of succeeding in its claims for misappropriation, civil conspiracy, and tortious interference.

58.    Gratuity admitted that it filed this action because its "negotiating position was pretty weak" and it was not going to be able to obtain a "favorable situation" for Gratuity in the pending Patent Case.  Docket No. 45 at 15:3–5.

59.    Gratuity continued to pursue this litigation, including through seeking emergency injunctive relief, despite knowing that Toast independently developed Toast Tips Manager, that members of Toast's CAB did not provide any of Gratuity's confidential or purported trade secret information to Toast, and that Gratuity owns no protectable trade secrets.

60.    In baselessly pursuing this action, Gratuity has damaged Toast at least in the form of unnecessary litigation costs to defend against this action and numerous motions for emergency and injunctive relief.

## COUNT III: DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836) BY TOAST

61.    Toast incorporates by reference the allegations contained in paragraphs 1 through 60 of these Counterclaims, as if fully set forth herein.

62.    Under the DTSA, a trade secret is defined as "financial, business, scientific, technical, economic, or engineering information" that "(A) the owner thereof has taken reasonable measures to keep . . . secret," and "(B) . . . derives independent economic value, actual or potential,

34

from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

63.     Under the DTSA, "misappropriation" is defined as the "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent[.]" *Id.* at § 1839(5).

64.     Gratuity alleges that Toast has acquired Gratuity's trade secrets through improper means and/or used Gratuity's information that Toast acquired from members of Toast's Customer Advisory Board.

65.     Toast denies Gratuity's allegations.

66.     Toast has not misappropriated any trade secrets under the DTSA.

67.     Toast has not and does not use any of Gratuity's purported confidential information.

68.     The information purportedly provided by Gratuity to members of Toast's Customer Advisory Board was not disclosed, transferred, or otherwise made available to Toast, nor does it qualify as a trade secret under the DTSA at least because it (a) is not secret; (b) has been disclosed by Gratuity; or (c) does not derive value from its secrecy.

69.     Gratuity's allegations of trade secret misappropriation have given rise to an actual and justiciable controversy between Gratuity and Toast.  In order to cease Gratuity's unjust harassment, it is both appropriate and critical that this Court issue a judicial determination and declaration that Toast has not misappropriated any of Gratuity's alleged trade secrets.

## COUNT IV: DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF TRADE SECRETS UNDER FLORIDA'S UNIFORM TRADE SECRETS ACT (FLA. STAT. § 688.001 ET. SEQ.)

70.     Toast incorporates by reference the allegations contained in paragraphs 1 through 69 of these Counterclaims, as if fully set forth herein.

71.     Under the FUTSA, a "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not been generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4).

72.     Under the FUTSA, "misappropriation" is defined as "(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) disclosure or use of a trade secret of another without express or implied consent[.]" *Id.* at § 688.02(2).

73.     Gratuity alleges that Toast has acquired Gratuity's trade secrets through improper means and/or used Gratuity's information that Toast acquired from members of Toast's Customer Advisory Board.

74.     Toast denies Gratuity's allegations.

75.     Toast has not misappropriated any trade secrets under the FUTSA.

76.     Toast has not and does not use any of Gratuity's purported confidential information.

77.     The information purportedly provided by Gratuity to members of Toast's Customer Advisory Board was not disclosed, transferred, or otherwise made available to Toast, nor does it qualify as a trade secret under the FUTSA at least because it (a) is not secret; (b) has been disclosed by Gratuity; or (c) does not derive value from its secrecy.

78.     Gratuity's allegations of trade secret misappropriation have given rise to an actual and justiciable controversy between Gratuity and Toast.  In order to cease Gratuity's unjust harassment, it is both appropriate and critical that this Court issue a judicial determination and declaration that Toast has not misappropriated any of Gratuity's alleged trade secrets.

## JURY DEMAND

Toast hereby requests a trial by jury on all claims that may be tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Toast respectfully demands judgments in its favor against Gratuity as follows:

A.  Compensatory damages arising from Gratuity's unfair method of competition and abuse of process, including, without limitation, Toast's fees and costs in defending against Gratuity's baseless lawsuits, in an amount to be determined at trial, and interest;

B.  Enhanced and punitive damages as permitted by law, including M.G.L. Ch. 93A § 11;

C.  Declaring that Toast has not misappropriated any trade secrets from Gratuity under the DTSA;

D.  Declaring that none of the information Gratuity alleges it shared with Toast constitutes a trade secret under the DTSA;

E.  Declaring that Toast has not misappropriated any trade secrets from Gratuity under the FUTSA;

F.  Declaring that none of the information Gratuity alleges it shared with Toast constitutes a trade secret under the FUTSA;

G.  Any and all equitable relief that may be available to Toast, including without limitation, enjoining Gratuity, its officers, agents, servants, employees, and attorneys, and all other

37

persons who are in active concert or participation with it or them, from asserting any claim for misappropriation of trade secrets under the DTSA, FUTSA, or any other laws governing the use or disclosure of trade secrets;

H.  Denying any reward to Gratuity for injunctive relief;

I.  Awarding Toast reasonable attorneys' fees and costs as permitted by law, including fees and costs incurred in responding to Gratuity's bad faith claims of trade secret misappropriation pursuant to 18 U.S.C. § 1836(b)(3)(D) and Fla. Stat. § 688.005; and

J.  For such other and further relief as this Court deems fair and just.

Dated: December 16, 2025

*/s/ Kate MacLeman*
Srikanth Reddy (BBO No. 669264)
Kate MacLeman (BBO No. 684962)
Jordan Bock (BBO No. 708171)
Tara Thigpen (BBO No. 707508)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Fax: (617) 523-1231
SReddy@goodwinlaw.com
KMacleman@goodwinlaw.com
JBock@goodwinlaw.com
TThigpen@goodwinlaw.com

*Attorneys for Defendant Toast, Inc.*

38

## CERTIFICATE OF SERVICE

I hereby certify that this document was served through the CM/ECF system on all registered users as indicated on the Notice of Electronic Filing (NEF).

*/s/ Kate MacLeman*
Kate MacLeman (BBO No. 684962)