IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GRATUITY SOLUTIONS, LLC and
GRATUITY, LLC,

*Plaintiffs,*

v.

TOAST, INC.,

*Defendant.*

C.A. No. 1:22-cv-11539-JEK

**PLAINTIFFS' ANSWERS TO TOAST'S COUNTERCLAIMS**

Plaintiffs and Counterclaim-Defendants, Gratuity Solutions, LLC and Gratuity, LLC ("Gratuity" or "Plaintiff"), by and through its attorneys hereby answers Defendant, Toast, Inc.'s ("Toast" or "Defendant"), Counterclaims (Dkt. 135) as follows:

**ANSWER TO COUNTERCLAIMS**

Plaintiff restates and incorporates by reference the allegations set forth in Paragraphs 1-86 of its Complaint, (Dkt. 1) and Paragraphs 1-72 of its Second Amended Complaint, (Dkt. 50 in 1:25-cv-10948-JEK), that was consolidated with this case.

**THE PARTIES**

1.      Counterclaim Plaintiff Toast, Inc. ("Toast") is a corporation organized under the laws of the State of Delaware with a principal place of business at 333 Summer Street, Boston, MA, 02210.

   **ANSWER:  Admitted.**

2.      Toast has built a restaurant technology platform, which provides a variety of technological solutions to the restaurant industry.  Included in part of its platform is Toast Tips

Manager, Toast's independently developed software that assists users in the management of gratuities earned by its employees.

**ANSWER: Gratuity admits that Toast has offered, sold, and/or licensed its Toast Tips Manager for the management of gratuities, but denies the remainder of the allegations in this paragraph.**

3.      Counterclaim Defendant Gratuity Solutions, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200, Naples, FL 34105.

**ANSWER: Admitted.**

4.      Counterclaim Defendant Gratuity, LLC is a limited liability company organized under the laws of the State of Florida with a place of business at 3520 Kraft Road, Suite 200, Naples, FL 34105.

**ANSWER: Admitted**

5.      Counterclaim Defendants Gratuity Solutions, LLC and Gratuity, LLC (collectively, "Gratuity") purport to provide a platform to process payroll.

**ANSWER: Denied.**

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1332, 2201, and 2202 and supplemental jurisdiction under 28 U.S.C. § 1367(a).

**ANSWER: Admitted as to 28 U.S.C. §§ 1331, 1332, and supplemental jurisdiction under 28 U.S.C. § 1367. Whether the Court has subject matter jurisdiction over 28 U.S.C. §§ 2201 and 2202 calls for a legal conclusion, and is therefore denied.**

7.      The Court has personal jurisdiction over Gratuity because Gratuity conducts extensive, continuous, and systemic business activities in this District and has pursued claims against Toast in this District.

**ANSWER:  Gratuity admits that it has pursued claims against Toast in this District, but denies the remainder of Toast's allegations in this paragraph.**

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), and by virtue of Gratuity's choice of forum in filing their complaint against Toast.  A substantial part of the events giving rise to this claim occurred in this judicial district, including harm to Toast as a result of Gratuity's anticompetitive and vexatious litigation.

**ANSWER:  Gratuity admits that venue is proper in this judicial district, but otherwise denies the allegations in this paragraph.**

9.      Because of Gratuity's complaint against Toast, there now is an actual, substantial, continuing, and justiciable controversy between the parties as to the alleged misappropriation of Gratuity's confidential information.

**ANSWER:  Denied.**

<u>STATEMENT OF FACTS</u>

A.      **Toast and Its Development of Toast Tips Manager**

10.      Toast is a Massachusetts-based company that sells a restaurant management platform that combines point of sale, hardware, software, and payment processing systems in a single suite of products, and offers its software across the entire restaurant ecosystem, including online ordering, inventory management, payroll, HR management, and analytics.

**ANSWER:  Gratuity lacks personal knowledge of the entirety of these allegations and therefore denies the same.**

3

11.     Toast also provides application program interfaces (APIs) that allow third-party partners to ingest data generated by Toast products into the third-party's pre-existing platforms. The APIs do not allow Toast to access the third-party's information but rather provide Toast's information to the third party.

**ANSWER:  Gratuity lacks personal knowledge of the entirety of these allegations and therefore denies the same.**

12.     At least as early as 2019, Toast identified an opportunity for a product that could address a variety of unique needs, including the ability of Toast's customers to use data already collected by Toast's then-existing product offerings to pool, allocate, and distribute tips.  Rather than leverage or purchase an existing product offering, Toast decided to develop its own platform for gratuity management, referred to as Toast Tips Manager.

**ANSWER:  Gratuity lacks personal knowledge of the entirety of these allegations and therefore denies the same.**

13.     By 2019, methods for calculating, pooling, and distributing tips were well-known in the restaurant industry and publicly disclosed.  Several patents had issued and were in the public domain claiming methods or products relating to gratuity management, including but not limited to U.S. Patent Application No. 2008/0065396 (Marshall) and U.S. Patent Application Publication No. 2014/0365322 (Phillips).  Additionally, third-party software for gratuity management was publicly available, including the Evention system, GraTrack Tip Software, and Heartland Tip Manager.

**ANSWER:  Gratuity lacks personal knowledge of the entirety of these allegations and therefore denies the same.**

4

14.     Toast independently developed Toast Tips Manager from the ground up, which required several years of development work and coding. No member of the team that developed Toast Tips Manager had access to any product or service offered for sale by Gratuity, including PayDayPortal.

**ANSWER:  Gratuity lacks personal knowledge of the entirety of these allegations and therefore denies the same.**

15.     Toast began beta testing Toast Tips Manager in late 2019 and, through 2020, approximately 100 customers participated in the beta testing phase for Tips Manager.

**ANSWER:  Gratuity lacks personal knowledge of the entirety of these allegations and therefore denies the same.**

16.     Toast made Toast Tips Manager available for widespread public use by November 16, 2021.

**ANSWER:  Admitted.**

17.     Toast continues to make enhancements to Toast Tips Manager in response to customer feedback and ideas brainstormed by Toast team members.

**ANSWER:  Gratuity admits that Toast has continued to make enhancements to its Tips Manager since its launch, but lacks personal knowledge of the remainder of the allegations in this paragraph and therefore denies the same.**

**B.     Toast's Customer Advisory Board**

18.     Toast maintains a Customer Advisory Board (CAB), which is a group of approximately 20 restaurant entrepreneurs in Toast's customer networks who provide industry and customer insights to guide the future of Toast and the restaurant community.

**ANSWER:  Plaintiffs admit that Toast maintains a Customer Advisory Board (CAB), who provide information to guide the future of Toast's commercial offerings as set forth in Plaintiffs' Second Amended Complaint, but lack personal information regarding the remainder of the allegations in this paragraph and therefore deny the same.**

19.    The CAB meets roughly four times per year.  These meetings primarily focus on hearing from CAB members about their ongoing challenges in the restaurant industry and getting feedback on certain tools and solutions Toast is developing.

**ANSWER:  Plaintiffs lack personal knowledge of the allegations in this paragraph and therefore deny the same.**

20.    CAB members are not paid for their services, although Toast covers travel costs for CAB members to attend CAB meetings and provides members with Toast-branded materials, giveaways, and discounts.

**ANSWER:  Plaintiffs lack personal knowledge of the allegations in this paragraph and therefore deny the same.**

21.    During CAB meetings, one or more Toast employees takes notes of the topics discussed and issues raised.  The notes are then compiled into detailed meeting minutes. Gratuity and/or PayDayPortal are not referenced in any of these minutes.  The meeting minutes contain only one reference to Toast Tips Manager in reference to two customers' potential use of the product.

**ANSWER:  Plaintiffs lack personal knowledge of the allegations in this paragraph and therefore deny the same.**

**C.      Gratuity, PayDayPortal, and Gratuity's Relationship with Toast**

22.      Gratuity is a Florida-based company that provides a gratuity allocation software known as PayDayPortal.

**ANSWER:  Gratuity admits that it is a Florida-based company that provides gratuity allocation software including at least its PayDayPortal.**

23.      Gratuity owns two patents relating to its PayDayPortal, U.S. Patent Nos. 9,741,050 and 10,726,436, which issued from a patent application published in 2014.  The specification of these patents disclose much of what was well-known at the time regarding gratuity management, including the concept of gratuity pooling among groups of servers, interfacing gratuity management systems with payroll, and allocation of gratuity based on the number of hours a particular employee works in a particular role.  Both patents have since been held invalid under 35 U.S.C. § 101 as being directed to patent ineligible subject matter.

**ANSWER:  Gratuity admits that it owns U.S. Patent Nos. 9,741,050 and 10,726,436, but otherwise denies the allegations in this paragraph.**

24.      On or around August 1, 2016, Gratuity "approached Toast to discuss building a solution to enable Toast Point-of-Sale customers to utilize the [Gratuity's] platform for gratuity distributions."  Docket No. 50, ¶ 17.

**ANSWER:  Admitted.**

25.      On or around September 26, 2016, Gratuity and Toast executed a Statement of Work to build an Application Program Interface (API) that would allow Toast customers who use Gratuity software to move point of sale and payroll information from the Toast system to Gratuity's gratuity management software.

**ANSWER:  Plaintiffs admit that on August 29, 2026, Gratuity and Toast entered into entered into their first Non-Disclosure Agreement ("2016 NDA") which was drafted by**

**Defendant and signed by Mr. Huh on or about August 29, 2016, a true and correct copy of which is attached as Exhibit 22 to Plaintiffs Second Amended Complaint and that based on the 2016 NDA, Toast obtained access to some of Plainiffs' trade secrets and other confidential information including certain technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development, and release plans; applications and/or methodologies for integrating and implementing such features sets and future features; work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code.  Dkt. 50 at ¶18.**

26.     U.S. Patent No. 9,741,050, assigned to Gratuity, issued on or around August 22, 2017.

**ANSWER:  Gratuity admits that U.S. Patent No. 9,741,050, assigned to Gratuity, issued on August 22, 2017.**

27.     On November 20, 2019, David Levine at Corum Group, on behalf of Gratuity, sent an unsolicited email to the then-CEO of Toast, Christopher Comparato.  The subject of the email was "Acquisition Opportunity: Rapidly Growing Saas Payday Leader."  The following day, Toast responded to Mr. Levine's email attaching Toast's then-existing non-disclosure agreement, which was already signed by Toast and asked Mr. Levine to countersign.  Gratuity provided two documents containing high-level information about Gratuity.

**ANSWER:   Denied.**

8

28.     The two documents provided to Toast by Mr. Levine do not contain any Gratuity trade secrets.

**ANSWER:  Denied.**

29.     On January 13, 2020, Toast attended a video conference meeting with principals at Gratuity and Corum Group that lasted approximately an hour.  On January 16, 2020, Toast informed Mr. Levine that it was unable to go forward with an acquisition but was excited to continue their partnership through Toast's API.

**ANSWER:  Denied.**

30.     On September 1, 2021, Gratuity reached out to Toast again seeking to be acquired.  *Id.* ¶ 24.  Toast did not respond.  *Id.*

**ANSWER:  Admitted.**

31.     Although Toast did not acquire Gratuity, there remains an API integration between Toast and Gratuity, allowing Toast customers who use Gratuity software to move point of sale and payroll information from the Toast system to Gratuity's gratuity management software.

**ANSWER:  Plaintiffs admits that an API integration between Toast and Gratuity exists, but deny the remaining allegations in this paragraph.**


**D.     Gratuity's Litigation Tactics**

32.     On September 30, 2022, Gratuity sued Toast in the District of Massachusetts, alleging infringement of U.S. Patent Nos. 9,741,050 and 10,726,436 and further alleging that Toast breached contractual obligations relating to a pair of non-disclosure agreements purportedly executed in 2016 and 2019 (the "Patent Case").

9

**ANSWER: Gratuity admits that on September 30, 2022, it filed a lawsuit against Toast in the District of Massachusetts alleging infringement of U.S. Patent Nos. 9,741,050 and 10,726,436 and breach of contract. Gratuity denies the remainder of the allegations in this paragraph.**

33. On Toast's motion, on June 7, 2023, the Court dismissed the infringement claims as to U.S. Patent No. 10,726,436 on the ground that the patent was invalid under 35 U.S.C. § 101.

**ANSWER: Admitted.**

34. On September 18, 2023, Toast petitioned for *inter partes* review ("IPR") of all claims in U.S. Patent No. 9,741,050 at the Patent Trial and Appeals Board ("PTAB"). The PTAB instituted an IPR on March 27, 2024.

**ANSWER: Admitted.**

35. On April 3, 2024, Toast moved to stay the Patent Case in view of the IPR institution. Gratuity opposed the Motion. On April 24, 2024, the Court stayed the case in its entirety pending resolution of the IPR proceeding.

**ANSWER: Admitted.**

36. Despite this Court's issuance of a stay of proceedings, and despite knowing that its remaining patent would likely be invalidated, Gratuity decided to file a suit based on nearly identical facts in the Middle District of Florida. Instead of alleging breach of contract and patent infringement claims, Gratuity alleged misappropriation of trade secrets, civil conspiracy, and intentional interference with a contract. Specifically, Gratuity now claimed that members of Toast's CAB provided Toast with Gratuity's confidential information and purported trade secrets

about Gratuity's PayDayPortal.  Gratuity simultaneously filed an *ex parte* motion for a temporary restraining order.

**ANSWER:  Gratuity admits that it filed suit against Toast in the U.S. District Court for the Middle District of Florida on August 14, 2024, alleging misappropriation of trade secrets under the federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act, as well as state law torts of civil conspiracy to misappropriate trade secrets, and intentional interference with contract, as set forth in its Second Amended Complaint.  (Dkt. 50.)  Gratuity also admits that it filed an *ex parte* motion for a temporary restraining order based on the allegations in Plaintiffs Second Amended Complaint.  Gratuity denies all remaining allegations in this paragraph.**

37.     Even though the Parties were well-acquainted due to the Patent Case, Gratuity never reached out to Toast prior to filing this action in the Middle District of Florida or prior to seeking an *ex parte* temporary restraining order.

**ANSWER:  Gratuity admits that it did not contact Toast before filing suit on August 14, 2024 in the Middle District of Florida regarding Toast's misappropriation of its trade secrets and state law torts, or seeking an *ex parte* temporary restraining order to prevent Toast from further misappropriation and misuse of Gratuity's trade secrets. Gratuity denies all other allegations in this paragraph.**

38.     In opposition to Gratuity's motion for a temporary restraining order, Toast provided declarations, sworn under the penalty of perjury, confirming that Toast independently developed Toast Tips Manager and that no member of Toast's CAB has ever provided Toast with any information regarding Gratuity or PayDayPortal.  Toast also determined that many of Gratuity's alleged "trade secrets" were well-known industry standards, not subject to secrecy

measures, and were even published in Gratuity's own patents. Despite Toast informing Gratuity of these facts, Gratuity chose to maintain this dispute.

**ANSWER: Gratuity admits that in response to Plaintiffs' Second Amended Complaint, Toast filed a Motion to Dismiss or in the Alternative to Transfer the action from the U.S. District Court for the Middle District of Florida to the District of Massachusetts, and provided Declarations alleging that Toast independently developed Toast Tips Manager and that no member of Toast's CAB has ever provided Toast with any confidential information regarding Gratuity or its PayDayPortal, but otherwise denies the remainder of the allegations in this paragraph.**

39. At the September 9, 2024 hearing on Gratuity's motion for a temporary restraining order, Gratuity's motive for filing this action became clear. Gratuity admitted to filing this action to obtain settlement leverage in the Patent Case. Specifically, counsel for Gratuity stated that "[o]nce the [Patent] case was stayed pending the IPR, there was some discussions between counsel as to whether or not there was any room for . . . an agreement to be reached, but it was pretty clear to us that given the IPR, our negotiating position was pretty weak and that it was not going to be a very favorable situation for us. So the dispute has continued." Docket No. 45 at 14:22–15:5.

**ANSWER: Denied.**

40. Judge Badalamenti denied the motion for a temporary restraining order, stating that many of the purported trade secrets were "publicly available on websites that [Gratuity] maintain[s]." Docket No. 42. Judge Badalamenti also noted that *ex parte* proceedings were "inappropriate" and that any further motion for injunctive relief should only "be filed after carefully considering the purported misappropriation of trade secrets." *Id.*

**ANSWER:  Denied**

41.    Despite Gratuity's knowledge that Toast independently developed Toast Tips Manager, that no CAB member provided Toast information about Gratuity or Gratuity's PayDayPortal, and that Gratuity did not own any recognizable trade secrets, on September 16, 2024, Gratuity filed a Second Amended Complaint.

**ANSWER:  Gratuity admits that it filed a Second Amended Complaint on September 16, 2024, but denies the remainder of the allegations in this paragraph.**

42.    Although the Second Amended Complaint contained a new set of asserted "trade secrets," none of the information met the definition of a trade secret under the applicable statutes. The information Gratuity claimed as its trade secrets again was publicly available, not reasonably secured, and did not derive economic value from its secrecy.  Accordingly, on October 14, 2024, Toast moved to dismiss the Second Amended Complaint or in the alternative to transfer to the District of Massachusetts.

**ANSWER:  Gratuity admits that on October 14, 2024, Toast moved to dismiss the Second Amended Complaint or in the alternative to transfer to the District of Massachusetts, but denies the remainder of the allegations in this paragraph.**

43.    Although Gratuity had filed its Second Amended Complaint more than a month earlier, and despite Judge Badalamenti's warning regarding any future requests for injunctive relief, Gratuity filed a motion for a preliminary injunction on October 18, 2024 – four days after Toast moved to dismiss this action.

**ANSWER:  Gratuity admits that it filed a motion for a preliminary injunction on October 18, 2024, but denies the remainder of the allegations in this paragraph.**

13

44.    On February 28, 2025, Judge Mizell of the Middle District of Florida issued an order transferring the case to the District of Massachusetts.  Docket No. 85.  In transferring the case under the first-to-file doctrine, the court acknowledged the clear overlap between the cases, noting that "it is apparent from the complaints that there is indeed similarity and overlap . . . . At the heart of each case is Toast's Tips Manager . . . [and] at bottom, the issue to be resolved in each case is whether Toast unlawfully used Gratuity's proprietary information or invention to develop its Tips Manager."  Docket No. 85 at 5.

**ANSWER:  Gratuity admits that Judge Mizell of the U.S. District Court for the Middle District of Florida issued an order transferring the case to the District of Massachusetts, as set forth in Docket No. 85.**

45.    Gratuity filed Rule 72 Objections to the Order, Docket No. 86, which were overruled by Judge Badalamenti, Docket No. 88, and the case was transferred, Docket No. 89. After transfer, this Court denied Gratuity's pending motion for a preliminary injunction.  Docket No. 94.

**ANSWER:  Admitted.**

46.    Gratuity's filing of this baseless action, because it was unhappy with the stay in the Patent Case and its poor settlement leverage, and its decision to continue to litigate this action, have significantly damaged Toast.  Toast has been forced to incur significant expenses to defend the litigation, including, but not limited to, attorneys' fees, expert fees, and costs associated with document collection and production.

**ANSWER:  Denied.**

14

**COUNT I: UNFAIR COMPETITION BY GRATUITY PURSUANT TO M.G.L. 93A**

47.    Toast incorporates by reference the allegations contained in paragraphs 1 through 46 of these Counterclaims, as if fully set forth herein.

**ANSWER:  Gratuity admits that Toast incorporates the allegations in paragraphs 1 through 46 of these Counterclaims, but otherwise denies those allegations as set forth herein.**

48.    Toast and Gratuity are both in the business of developing software for the restaurant industry, including software to manage the distribution of gratuities.

**ANSWER:  Admitted.**

49.    Gratuity has engaged and continues to engage in unfair and deceptive methods of competition at least through willfully filing a baseless lawsuit against Toast and repeatedly asserting meritless claims of inventorship and ownership of algorithms to calculate gratuity distribution against Toast.

**ANSWER:  Denied.**

50.    Gratuity knew or should have known of the falsity of any claim that Toast or members of Toast's Customer Advisory Board misappropriated trade secrets claimed by Gratuity when bringing this litigation and consequently that its related tort claims for tortious interference and civil conspiracy predicated on the alleged misappropriation were also baseless.  Rather, counsel for Gratuity admitted at a court conference in the Middle District of Florida that it filed this case not to win the lawsuit, but for the pernicious collateral purpose of gaining settlement leverage in the Patent Case.

**ANSWER:  Denied.**

51.     Gratuity has engaged and continues to engage in an unfair method of competition by repeatedly and baselessly claiming Toast has misappropriated its alleged trade secrets.  As part of this case alone, Gratuity has frivolously sought a preliminary injunction and a temporary restraining order against Toast, aggressively asserting trade secrets for the illegitimate and collateral purpose of inflicting harm and business disruption on Toast to further settlement leverage.

**ANSWER:  Denied.**

52.     Gratuity has engaged in its unfair and deceptive method of competition willfully and knowingly.

**ANSWER:  Denied.**

53.     Gratuity's unfair or deceptive acts or trade practices have occurred substantially in Massachusetts as described in the Second Amended Complaint, as well as Toast's counterclaims.  By way of example, Gratuity has engaged with multiple conversations with Toast in Massachusetts in order to convince Toast to acquire Gratuity's business, and when this transaction did not come to fruition, Gratuity filed the Patent Case in Massachusetts, and Gratuity admitted that it filed this action to gain settlement leverage against Toast in the pending Patent Case.

**ANSWER:  Denied.**

54.     Gratuity's activities have directly and proximately caused a loss of money or property to Toast, including expenses in defending itself in this abusive lawsuit, first in Florida and now in Massachusetts.

**ANSWER:  Denied.**

55.     Gratuity's violation of M.G.L. Ch. 93A through its unfair or deceptive acts or trade practices was done willfully and/or knowingly and for a pernicious collateral purpose, thereby entitling Toast to enhanced damages and attorneys' fees and costs as permitted by M.G.L. Ch. 93A.

**ANSWER:  Denied.**

### COUNT II: ABUSE OF PROCESS BY GRATUITY

56.     Toast incorporates by reference the allegations contained in paragraphs 1 through 55 of these Counterclaims, as if fully set forth herein.

**ANSWER:  Gratuity admits that Toast incorporates the allegations in paragraphs 1 through 55 of these Counterclaims, but otherwise denies those allegations as set forth herein.**

57.     On information and belief, Gratuity filed this suit for the ulterior and illegitimate purpose of disruption to Toast's business and to gain settlement leverage against Toast in the pending Patent Case, which purpose is collateral to the legitimate purpose of succeeding in its claims for misappropriation, civil conspiracy, and tortious interference.

**ANSWER:  Denied.**

58.     Gratuity admitted that it filed this action because its "negotiating position was pretty weak" and it was not going to be able to obtain a "favorable situation" for Gratuity in the pending Patent Case.  Docket No. 45 at 15:3–5.

**ANSWER:  Denied.**

59.     Gratuity continued to pursue this litigation, including through seeking emergency injunctive relief, despite knowing that Toast independently developed Toast Tips Manager, that

17

members of Toast's CAB did not provide any of Gratuity's confidential or purported trade secret information to Toast, and that Gratuity owns no protectable trade secrets.

**ANSWER:  Denied.**

60.     In baselessly pursuing this action, Gratuity has damaged Toast at least in the form of unnecessary litigation costs to defend against this action and numerous motions for emergency and injunctive relief.

**ANSWER:  Denied.**

**COUNT III: DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836) BY TOAST**

61.     Toast incorporates by reference the allegations contained in paragraphs 1 through 60 of these Counterclaims, as if fully set forth herein.

**ANSWER:  Gratuity admits that Toast incorporates the allegations in paragraphs 1 through 60 of these Counterclaims, but otherwise denies those allegations as set forth herein.**

62.     Under the DTSA, a trade secret is defined as "financial, business, scientific, technical, economic, or engineering information" that "(A) the owner thereof has taken reasonable measures to keep . . . secret," and "(B) . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3).

**ANSWER:  Gratuity admits that the definition provided by Toast is incomplete.**

63.     Under the DTSA, "misappropriation" is defined as the "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired

18

by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent[.]" *Id.* at § 1839(5).

**ANSWER:  Gratuity admits that the definition provided by Toast is incomplete.**

64.     Gratuity alleges that Toast has acquired Gratuity's trade secrets through improper means and/or used Gratuity's information that Toast acquired from members of Toast's Customer Advisory Board.

**ANSWER:  Gratuity admits that its Second Amended Complaint includes at least these allegations. (Dkt. 50.)**

65.     Toast denies Gratuity's allegations.

**ANSWER:  Gratuity admits that Toast denies at least the allegations listed in paragraph 64 above.**

66.     Toast has not misappropriated any trade secrets under the DTSA.

**ANSWER:  Denied.  (Dkt. 50.)**

67.     Toast has not and does not use any of Gratuity's purported confidential information.

**ANSWER:  Denied. (Dkt. 50.)**

68.     The information purportedly provided by Gratuity to members of Toast's Customer Advisory Board was not disclosed, transferred, or otherwise made available to Toast, nor does it qualify as a trade secret under the DTSA at least because it (a) is not secret; (b) has been disclosed by Gratuity; or (c) does not derive value from its secrecy.

**ANSWER:  Denied. (Dkt. 50.)**

69.     Gratuity's allegations of trade secret misappropriation have given rise to an actual and justiciable controversy between Gratuity and Toast.  In order to cease Gratuity's unjust

harassment, it is both appropriate and critical that this Court issue a judicial determination and declaration that Toast has not misappropriated any of Gratuity's alleged trade secrets.

**ANSWER:  Denied. (Dkt. 50.)**

## COUNT IV: DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF TRADE SECRETS UNDER FLORIDA'S UNIFORM TRADE SECRETS ACT (FLA. STAT. § 688.001 ET. SEQ.)

70.    Toast incorporates by reference the allegations contained in paragraphs 1 through 69 of these Counterclaims, as if fully set forth herein.

**ANSWER:  Gratuity admits that Toast incorporates the allegations in paragraphs 1 through 69 of these Counterclaims, but otherwise denies those allegations as set forth herein.**

71.    Under the FUTSA, a "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not been generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4).

**ANSWER:  Admitted.**

72.    Under the FUTSA, "misappropriation" is defined as "(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) disclosure or use of a trade secret of another without express or implied consent[.]" *Id.* at § 688.02(2).

**ANSWER:  Admitted.**

20

73.    Gratuity alleges that Toast has acquired Gratuity's trade secrets through improper means and/or used Gratuity's information that Toast acquired from members of Toast's Customer Advisory Board.

**ANSWER: Gratuity admits that its Second Amended Complaint includes at least these allegations. (Dkt. 50.)**

74.    Toast denies Gratuity's allegations.

**ANSWER: Gratuity admits that Toast denies at least the allegations listed in paragraph 73.**

75.    Toast has not misappropriated any trade secrets under the FUTSA.

**ANSWER: Denied. (Dkt. 50.)**

76.    Toast has not and does not use any of Gratuity's purported confidential information.

**ANSWER: Denied. (Dkt. 50.)**

77.    The information purportedly provided by Gratuity to members of Toast's Customer Advisory Board was not disclosed, transferred, or otherwise made available to Toast, nor does it qualify as a trade secret under the FUTSA at least because it (a) is not secret; (b) has been disclosed by Gratuity; or (c) does not derive value from its secrecy.

**ANSWER: Denied. (Dkt. 50.)**

78.    Gratuity's allegations of trade secret misappropriation have given rise to an actual and justiciable controversy between Gratuity and Toast. In order to cease Gratuity's unjust harassment, it is both appropriate and critical that this Court issue a judicial determination and declaration that Toast has not misappropriated any of Gratuity's alleged trade secrets.

**ANSWER: Denied. (Dkt. 50.)**

21

## PRAYER FOR RELIEF

Gratuity denies all allegations contained in Toast's Prayer for Relief including its Counterclaims and denies that Toast is entitled to any of the relief requested in sections A-J therein, or to any other relief whatsoever from Gratuity.

## AFFIRMATIVE DEFENSES

In response to Defendant's Counterclaims, Plaintiff asserts the following affirmative defenses. Plaintiff reserves the right to assert additional affirmative defenses as they become known through discovery.

## FIRST AFFIRMATIVE DEFENSE

Defendant's Counterclaims fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff reserves the right to assert any other legal or equitable defenses to which it is entitled.

Accordingly, Defendant's Counterclaims should be dismissed and, instead, Plaintiffs are entitled to the relief requested in its Complaint (Dkt. 1) and Second Amended Complaint (Dkt. 50) asserted against Defendant, which are incorporated herein by reference.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests this Court to enter judgment for Plaintiffs and against Defendant as follows:

A.      a judgment denying Defendant any and all of its requested relief and any relief

whatsoever and dismissing Defendant's Counterclaims in its entirety with

22

prejudice;

B.    a judgment that Defendant has misappropriated Plaintiffs' trade secrets as alleged in its Second Amended Complaint in Counts I and II;

C.    a judgment that Defendant liable under Counts III and IV as alleged in Plaintiffs' Second Amended Complaint;

D.    a judgment that Defendant liable for breach of contract as alleged in Plaintiffs' Complaint

E.    an award of damages to be paid by Defendant adequate to compensate Plaintiffs for Defendant's misappropriation, business torts, and breach of contract against Plaintiffs, including interest, costs, expenses and an accounting;

F.    a judgment that Plaintiffs are entitled to recovery of their cost of suit, including reasonable attorney's fees as set forth in its Complaint and Second Amended Complaint; and

G.    for such further relief in law and in equity as the Court may deem just and proper.

Respectfully submitted,


DATE: January 6, 2026                        /s/Alan A. Wright_____
                                             Raymond P. Ausrotas (BBO #640315)
                                             RAusrotas@arrowoodllp.com
                                             William F. McGonigle (BBO #569490)
                                             wmcgonigle@arrowoodllp.com
                                             **ARROWOOD LLP**
                                             10 Post Office Square, 7th Floor South
                                             Boston, MA 02109
                                             Tel: (617) 849-6200

                                             Alan A. Wright (*pro hac vice*)
                                             awright@devlinlawfirm.com
                                             Timothy Devlin (*pro hac vice*)
                                             tdevlin@devlinlawfirm.com
                                             **DEVLIN LAW FIRM LLC**
                                             1526 Gilpin Avenue
                                             Wilmington, DE 19806
                                             Tel: (302) 449–9010

                                             *Attorneys for Plaintiffs*
                                             *Gratuity Solutions, LLC and*
                                             *Gratuity, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 6, 2026, I electronically filed the above document(s) with the Clerk of the Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/Alan A. Wright*
Alan A. Wright
