## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GRATUITY SOLUTIONS, LLC, and GRATUITY, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>TOAST, INC.,<br><br>*Defendant.* | Civil Action No. 1:22-cv-11539-JEK<br><br>JURY TRIAL DEMANDED<br><br>ORAL ARGUMENT REQUESTED |

## PLAINTIFFS' SPECIAL MOTION TO DISMISS TOAST'S COUNTERCLAIMS I AND II PURSUANT TO THE MASSACHUSETTS ANTI-SLAPP STATUTE

Dated: February 24, 2026

/s/ *Alan Wright*

Alan Wright
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010
awright@devlinlawfirm.com

*Attorneys for Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC*

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

III.  LEGAL STANDARDS ....................................................................................... 6

A.  Gratuity's Special Motion to Dismiss Under the Massachusetts Anti-SLAPP Statute Is Properly Before this Court ................................................................................... 6

B.  The Massachusetts Anti-SLAPP Statute Is Designed to Prevent Retaliation Against Litigants for Exercising Their Constitutional Right to Petition ................................ 7

C.  Gratuity Has Met Its Burden of Proof Under the Anti-SLAPP Statute ............................. 8

IV.  ARGUMENT ..................................................................................................... 9

A.  Defendant's Unfair Competition Counterclaim Is Based Solely on Plaintiffs Petitioning Activity ............................................................................................................ 10

B.  Defendant's Count II Counterclaim Is Based Solely on Plaintiffs Petitioning Activity ... 12

V.  CONCLUSION ................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*,
493 Mass. 539, 227 N.E.3d 1019 (2024) ........................................................ 10, 11, 14

*Burley v. Comets Community Youth Center, Inc.*,
75 Mass. App. Ct. 818 (2009) ...................................................................... 9

*Duracraft Corp. v. Holmes Prods. Corp.*,
427 Mass. 156, 691 N.E.2d 935 (1998) ......................................................... 8

*Global NAPS, Inc. v. Verizon New England, Inc.,*
*63 Mass. App. Ct. 600, 825 N.E.2d 529 (2005)* ............................................. 9

*Godin v. Schencks*,
629 F. 3d 79 (1st Cir. 2010) ....................................................................... 6

*Henry v. Lake Charles Am. Press, LLC*,
566 F.3d 164 (5th Cir. 2009) ..................................................................... 6

*Hidalgo v. Watch City Constr. Corp.*,
105 Mass. App. Ct. 148, 250 N.E.3d 568 (2024) .......................................... 11, 14

*Kirby v. Petit*,
No. 24-cv-12015-AK, 2025 U.S. Dist. LEXIS 165113 (D. Mass. June 24, 2025)............ passim

*McLaughlin v. Rubenstein*,
SUCV20163811BLS1, 2017 Mass. Super. LEXIS 182, 2017 WL 5985470 (Mass. Super. Ct.
Oct. 12, 2017) ...................................................................................... 14

*Moskow v. Wheeler*,
No. 24-cv-10474-GAO1, 2025 U.S. Dist. LEXIS 169695 (D. Mass. July 24, 2025) ................ 1

*N. Am. Expositions Co. Ltd. P'ship v. Corcoran*,
452 Mass. 852 (2009) ............................................................................. 8

*North American Expositions Co. Ltd. P'ship v. Corcoran,*
452 Mass. 852, 898 N.E.2d 832 (Mass. 2009)................................................. 9

*Office One, Inc. v. Lopez*,
437 Mass. 113, 769 N.E.2d 749 (2002). .................................................... 7, 8

*Panagopoulos v. Genuine Food Lab, LLC*,
Civil Action No. 21-cv-11873, 2022 U.S. Dist. LEXIS 199328 (D. Mass. Nov. 2, 2022) ........ 7

*Radfar v. City of Revere*,
Civil Action No. 1:20-cv-10178-IT, 2021 U.S. Dist. LEXIS 170905 (D. Mass. Sep. 9, 2021) . 7

*Wenger v. Aceto*,
451 Mass. 1 (2008). ............................................................................... 8

*Wilcox v. Superior Court,*
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446 (1994)............................................... 8

*Wynn v. Creigle,*
  *63 Mass. App. Ct. 246, 825 N.E. 2d 559 (2005)* .......................................................... 9

**Statutes**

Mass. Gen. Laws ch. 231 § 59H ............................................................................... 7, 9

## I.    INTRODUCTION

Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC ("Gratuity" or "Plaintiffs") move to dismiss Defendants Toast, Inc.'s ("Toast" or "Defendant") Count I and II counterclaims pursuant to the Massachusetts Anti-SLAPP statute, Mass. Gen. Laws ch. 231 § 59H.  Toast raised these two counterclaims for Unfair Competition under Massachusetts General Law 93A (Count I) and Abuse of Process (Count II) in its Answer to Plaintiffs' Second Amended Complaint filed December 16, 2025.  (Dkt. 135.)  The two counterclaims are transparently punitive in nature, brought for the improper purpose of penalizing Plaintiffs for merely asserting the causes of action in its Second Amended Complaint, despite the fact that two district courts considered the same causes of action following Toast's two separate Motions to Dismiss, and allowed those claims to proceed.  (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 85; *Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 1:25-cv-10948-JEK, Dkt. 124.)

The Anti-SLAPP statute prohibits claims that seek to impose liability on a party in retaliation for seeking redress of a grievance, such as invoking the judicial process to obtain relief.  *See Moskow v. Wheeler*, No. 24-cv-10474-GAO1, 2025 U.S. Dist. LEXIS 169695, at *5 (D. Mass. July 24, 2025) ("The statute protects people who exercise their right to petition from the costs of defending harassing or retaliatory litigation.").

Toast's counterclaims mischaracterize the record, wrongly attempt to brand Plaintiffs as abusive for simply defending against Toast's theft of its trade secrets, and also wrongly seek to cast Toast as a victim.  But the record establishes that Plaintiffs' filing of this lawsuit was properly supported, and the Court should dismiss Toast's Count I and II counterclaims as an

1

improper attempt to blame Plaintiffs for seeking judicial enforcement of their rights against Toast's increased misappropriation, use, and publication of Plaintiffs' valuable trade secrets.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiffs request oral argument.

## II.    BACKGROUND

Toast's Count I and II counterclaims rest on fundamental mischaracterizations of the factual and procedural record.  As alleged in the Second Amended Complaint ("SAC"), the action filed in Florida (Dkt. 50, *Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM) ("the Florida action") pled several separate and distinct causes of action—both in time and substance—from the causes of action in this pending action, which was stayed at the time.  (Dkt. 109.)  Indeed, as Gratuity noted in response to Toast's motion to transfer, resolution of the claims in this action would have had no impact on the causes of action brought in Florida as the causes are mutually exclusive.  (Dkt. 64 at 16-20, *Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM.)  Further, Toast's misappropriation of Plaintiffs' trade secrets damaged Plaintiffs in Florida where they are headquartered.  (Dkt. 50 at ¶2, *Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM.)   Thus, contrary to Defendant's suggestion, the Florida action was not baseless in any sense.

Toast alleges that Plaintiffs filed the suit in Florida because they "had no leverage" in this pending Massachusetts action.  (Dkt. 135 at 58.)  But Toast improperly attributes improper motive based purely on a cropped quote from Plaintiffs' counsel to Judge Badalamenti of the Middle District of Florida, taking the statement completely out of context.  During a hearing of September 4, 2024, regarding Plaintiffs' First Amended Complaint and *Ex Parte* Motion for a

2

Temprorary Restraining Order, (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 45 transcript), Judge Badalamenti specifically asked counsel for Plaintiffs whether the parties had discussed resolution of their disputes prior to Plaintiffs' filing of the Florida action.  (*Id*. at 13:18-14:3).

In response, counsel for Plaintiffs explained that there had been numerous discussions between the parties throughout the pending Massachusetts patent action, (*id*. at 14:4-24), and specifically noted that it was *Toast*—not Gratuity—that asserted that Gratuity's negotiating position was weak once that case was stayed pending the IPR of U.S. Patent No. 9,741,050 ("the '050 patent"):

> Once the case was stayed pending the IPR, there was some discussion between counsel as to whether or not there was any room for, you know, an agreement to be reached, but it was made pretty clear to us that given the IPR, our negotiating position was pretty weak and that it was not going to be a very favorable situation for us.  So the dispute has continued. It is continuing. The case is pending. The IPR before the Patent Office is continuing and should be wrapped up sometime in early 2025.  But that doesnt change the fact that these trade secrets -- which are really at the heart of my client's business. And the way that they protect themselves is through these trade secrets, of keeping that information confidential so that people can't place it on the internet and competitors can't just pick it up and use it. That's the problem that we're running into. ***And given our history, I -- you know, we did not see that that was going to be resolved without seeking some sort of remedy to take this information down off the website.***  Certainly the how-to videos are very -- you know, very problematic for my client.

(*Id.* at 14:25-15:15.)[1]

Notably, Judge Badalamenti never ruled that Plaintiffs' First Amended Complaint in the Florida action had no merit.  To be sure, during that hearing, Judge Badalamenti was under the misimpression that Plaintiffs' trade secrets had been disclosed publicly.  This followed Toast's misrepresentations to the court that any member of the public could access the trade secrets

---

[1] Unless otherwise indicated, emphasis in this Brief has been added.

contained in Plaintiffs' sealed exhibit 24 of its First Amended Complaint. (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 45 Transcript at 21:23-22:5.)  That assertion was subsequently proven false.

Specifically, sealed exhibit 24 set forth a side-by-side comparison of several of Gratuity's trade secrets found on its confidential PayDayPortal system against Toast's public Tips Manager system.  Toast represented to the court that these links to Gratuity's PayDayPortal were publicly accessible. (*Id.*)  On the contrary, however, as counsel for Plaintiffs later clarified for Judge Badalamenti, the links provided in sealed Exhibit 24 were links to confidential PDFs that Gratuity had prepared specifically for the court to view the materials without undergoing the normal sign-up and contracting process. (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 46.)

Importantly, during that hearing Judge Badalamenti did not rule that Plaintiff's First Amended Complaint had no merit.  Indeed, he permitted Plaintiffs to file the Second Amended Complaint to further identify the trade secrets misappropriated by Toast, (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM Dkt. 45 at 29:1-4, 16-19), which Plaintiffs did on September 16, 2024. (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 50.)

Moreover, during the hearing Judge Badalamenti also instructed Plaintiffs to consider "the interaction between what is being asserted in this case and that of which has been asserted in D-Mass." (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 45 at 30:19-25.)  Then, in the Second Amended Complaint, Plaintiffs further clarified the distinctions between the Florida action and this action including the distinct causes of action for misappropriation, different supporting facts, and different timing. (*Gratuity Solutions, LLC,*

4

*and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt 50 at ¶¶20-41; *see also* Dkt. 64 at 16-20.)

In response, Toast filed a motion to dismiss or, in the alternative, to transfer to this District of Massachusetts on October 14, 2024.  (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 54.)  Following a hearing before Magistrate Judge Mizzel, the Florida Court granted Toast's motion to transfer, and deferred ruling on its motion to dismiss.  (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 85.)  Upon transfer to this court, Toast again brought a motion to dismiss for failure to state a claim on May 9, 2025.  (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 1:25-cv-10948-JEK, Dkt. 105.)  That motion was also denied with the Court ruling:  (1) Gratuity "adequately alleged an underlying tort—namely, that Toast misappropriated trade its trade secrets;" (2) that the "complaint also plausibly alleges that Toast" had an understanding with certain members of its Customer Advisory Board "to misappropriate Gratuity's trade secrets;" and (3) that "the complaint sufficiently states a claim of intentional interference with contract under Massachusetts law." (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 1:25-cv-10948-JEK, Dkt. 124 at 17, 19.)  Thereafter, the case was consolidated with this instant action.  (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 1:25-cv-10948-JEK, Dkt. 125.)  Now, having twice failed to obtain dismissal in two different courts, Toast brings these two baseless counterclaims in retaliation.

Plaintiffs' decision to file suit was driven by Defendant's separate misappropriation of Plaintiffs' trade secrets and the need for immediate action to prevent further damages, not for any tactical advantage or avoidance of this district.  Plaintiffs proceeded with its Second Amended Complaint after Defendant made it clear it was not interested in resolving the Massachusetts

5

dispute following the grant of the '050 patent IPR and the resultant stay of this case. (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 45 Transcript at 14:25-15:5.)

Accordingly, as set forth further below, the Court should dismiss Toast's counterclaims in Counts I and II as violative of the Massachusetts' Anti-SLAPP statute.

## III.    LEGAL STANDARDS

### A.    Gratuity's Special Motion to Dismiss Under the Massachusetts Anti-SLAPP Statute Is Properly Before this Court

As an initial matter, the First Circuit has made clear that state anti-SLAPP statutes should be enforced in federal proceedings. *Godin v. Schencks*, 629 F. 3d 79, 86-87 (1st Cir. 2010) ("the dual aims of Erie: discouragement of forum shopping and avoidance of inequitable administration of the laws…are best served by enforcement of [state anti-SLAPP provisions] in federal court.") (internal citations omitted). Other federal appellate courts have come to the same conclusion. *See Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164 (5th Cir. 2009); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999).

Further, Massachusetts district courts have repeatedly held that the state anti-SLAPP statute is applicable in federal court. Relying on *Godin v. Schencks*, the district court in *Radfar v. City of Revere* found that "Massachusetts' anti-SLAPP statute is 'in all relevant respects the same as the Maine anti-SLAPP statute'. . . [a]ccordingly, Massachusetts' anti-SLAPP statute applies to Plaintiffs' Massachusetts claims." *Radfar v. City of Revere*, Civil Action No. 1:20-cv-10178-IT, 2021 U.S. Dist. LEXIS 170905, at *8 (D. Mass. Sep. 9, 2021); s*ee also Panagopoulos v. Genuine Food Lab, LLC*, Civil Action No. 21-cv-11873, 2022 U.S. Dist. LEXIS 199328, at *16 (D. Mass. Nov. 2, 2022) ("the Commonwealth's anti-SLAPP statute is applicable to the state law claims before the Court. . .").

Gratuity notes that the anti-SLAPP statute states that a claim must be filed within 60 days of the filing of the Counterclaims at issue. Mass. Gen Laws ch. 231 §59H. However, the statute also provides that the court has discretion to entertain a motion filed after 60 days on terms it deems proper. *Id.*; *Sendrowski v. Roy*, Nos. 105285, 2006-00445A, 2008 Mass. Super. LEXIS 394, at *6 (Dec. 31, 2008). Here, Gratuity contacted Toast regarding this motion on February 13, 2026, and requested a response by February 17th, 60 days from the filing of Toast's Counterclaims. Counsel for Toast was unable to obtain Toast's position on this motion by February 17th, but agreed to a one-week extension or agreed not to object to the timeliness of this filing. On February 23, 2026, counsel for Toast indicated that Toast would not withdraw the two counterclaims.

### B.    The Massachusetts Anti-SLAPP Statute Is Designed to Prevent Retaliation Against Litigants for Exercising Their Constitutional Right to Petition

Mass. General Laws c. 231, § 59H (the anti-SLAPP statute), "protects the 'exercise of [the] right of petition under the constitution of the United States or of the Commonwealth,' by creating a procedural mechanism, in the form of a special motion to dismiss, for the expedient resolution" of suits designed to deter or retaliate against individuals who seek to exercise their right of petition. *Office One, Inc. v. Lopez*, 437 Mass. 113, 121, 769 N.E.2d 749 (2002). A SLAPP suit (against which an anti-SLAPP special motion to dismiss may be aimed) generally has no merit because the proffering party is using "litigation to intimidate opponents' exercise of rights of petitioning and speech," and "to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 161-162, 691 N.E.2d 935 (1998), quoting *Wilcox v. Superior Court,* 27 Cal.App.4th 809, 816-817, 33 Cal.Rptr.2d 446 (1994). *Wenger v. Aceto*, 451 Mass. 1, 5 (2008).

Protected "petitioning activity" is broadly defined in the anti-SLAPP statute as:

7

> [A]ny written or oral statement made before or submitted to a . . . judicial body . . . ; any written or oral statement made in connection with an issue under consideration or review by a . . . judicial body . . . ; any statement likely to encourage consideration or review of an issue by a . . . judicial body . . . ; or any other statement falling within constitutional protection of the right to petition government.

Mass. Gen. Laws ch. 231 § 59H; *see also N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 452 Mass. 852, 861 (2009) ("Consistent with the expressed legislative intent, 'petitioning' has been consistently defined to encompass a 'very broad' range of activities in the context of the anti-SLAPP statute."); *Office One*, 437 Mass. at 123 (discussing the "broad definition of petitioning activity protected by the statute"); *Burley v. Comets Community Youth Center, Inc.*, 75 Mass. App. Ct. 818, 821 (2009) (same).

Specifically, "[p]etitioning includes all 'statements made to influence, inform, or at the very least, reach governmental bodies--either directly or indirectly.'" *North American Expositions Co. Ltd. P'ship v. Corcoran,* 452 Mass. 852, 862, 898 N.E.2d 832, 841 (Mass. 2009) (*quoting Global NAPS, Inc. v. Verizon New England, Inc.,* 63 Mass. App. Ct. 600, 605, 825 N.E.2d 529 (2005)); *see also Wynn v. Creigle,* 63 Mass. App. Ct. 246, 254, 825 N.E. 2d 559, 566 (2005) (holding that statements are made "in connection with" an issue under consideration or review when they are "sufficiently tied to" or are "in advancement of" the petition under review); *Global NAPS*, 63 Mass. App. Ct. at 605 n.5 ("The final [petitioning activity definition] serves as a catchall provision at the end of the enumeration, and we read it to indicate that the four specific items listed in the sixth paragraph of c. 231, § 59H, are meant to be illustrative, not exhaustive.").

**C.    Gratuity Has Met Its Burden of Proof Under the Anti-SLAPP Statute**

A special motion to dismiss under the anti-SLAPP statute entails a two-step burden-shifting framework. *Kirby v. Petit*, No. 24-cv-12015-AK, 2025 U.S. Dist. LEXIS 165113, at *11

(D. Mass. June 24, 2025) (internal citations omitted).  The first step requires the proponent of the special motion to dismiss "make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the [party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities."  *Id*. at *11 (internal citations omitted).

Once this threshold burden has been met, "the anti-SLAPP statute—at step two—'requires allowance of the special motion to dismiss, unless the [special motion opponent] shows' that the special motion proponent's exercise of its right of petition 'was devoid of any reasonable factual support or any arguable basis in law' and . . . 'caused actual injury to the [special motion opponent].'" *Id*. at *12-13 (quoting *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 493 Mass. 539, 557, 227 N.E.3d 1019 (2024)).  Notably, "the Supreme Judicial Court has emphasized that proving that particular petitioning activity is 'devoid' of *any* reasonable factual support or *any* arguable basis in law is a difficult task."  *Kirby*, 2025 U.S. Dist. LEXIS 165113, at *13 (quoting *Hidalgo v. Watch City Constr. Corp.*, 105 Mass. App. Ct. 148, 153, 250 N.E.3d 568 (2024) (quoting *Bristol Asphalt*, 493 Mass. at 557).

Moreover, Section 6F provides for attorneys' fees and costs in "any civil action in which a finding, verdict, decision, award, order or judgment has been made" that determined that "all or substantially all of the claims, defenses, setoffs or ***counterclaims***. . . were wholly insubstantial, frivolous and not advanced in good faith." *Kirby*, 2025 U.S. Dist. LEXIS 165113, at *22 (quoting Mass. Gen. Laws ch. 231, § 6F).

## IV.    ARGUMENT

Toast brings two state law counterclaims against Gratuity is an attempt to punish Gratuity for exercising its constitutional right of petition.  Toast alleges that Gratuity's Florida lawsuit for

9

misappropriation of its trade secrets is "baseless" and "repeatedly assert[s] meritless claims. . .

against Toast." (Dkt. 135 at 49.)

These pleadings are objectively untrue.  As this Court ruled in its denial of Toast's

motion to dismiss, "Gratuity has, as explained, adequately alleged an underlying tort—namely

that Toast misappropriated its trade secrets." (*Gratuity Solutions, LLC, and Gratuity, LLC, v.

Toast, Inc.*, No. 1:25-cv-10948-JEK, Dkt. 124 at 17.)  In addition, the Court stated the

"complaint also plausibly alleges that Toast" had an understanding with certain members of its

Customer Advisory Board to misappropriate Gratuity's trade secrets.  (*Id.*)  Further, "the

complaint sufficiently states a claim of intentional interference with contract under

Massachusetts law." (*Id.* at 19.)  This alone demonstrates that Gratuity's action is neither

"baseless" nor "meritless."

"As a matter of law, the filing of a lawsuit constitutes petitioning activity under the anti-

SLAPP statute."  *Kirby*, 2025 U.S. Dist. LEXIS 165113, at *14.  Because Toast's counterclaims

are based solely on Gratuity's filing of its Florida action, the Court must dismiss the

counterclaims as Toast cannot meet its high burden to show that Gratuity's exercise of its right of

petition "was devoid of any reasonable factual support or any arguable basis in law" that "caused

actual injury" to Toast.  *Kirby*, 2025 U.S. Dist. LEXIS 165113, at *12-13.

> **A.      Defendant's Unfair Competition Counterclaim Is Based Solely on Plaintiffs Petitioning Activity**

Toast's Count I counterclaim accuses Gratuity of unfair competition pursuant to M.G.L.

93A.  (Dkt. 135 at 47.)  But Toast fails to explain how Gratuity's filing of the Florida action was

an unfair trade practice when Gratuity merely sought judicial enforcement of its valuable trade

secrets from Toast's misappropriation, use, and publication thereof.  Toast behaves as if it has

not been legitimately accused of trade secret misappropriation.  But two courts have now agreed

10

that Gratuity's lawsuit should proceed, demonstrating that Gratuity was well within its right to file suit.

It is especially unclear how Toast can assert that Gratuity has engaged in "unfair and deceptive methods of competition" by filing a "baseless lawsuit" with "meritless claims" after a direct finding that Gratuity's Second Amended Complaint has both "adequately alleged" trade secret misappropriation and "sufficiently states a claim of intentional interference with contract under Massachusetts law." (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 1:25-cv-10948-JEK, Dkt. 124 at 17 and 19.) After failing twice to have the claims against it dismissed, Toast decided to bring its counterclaim for unfair competition. This counterclaim serves no purpose other than as retaliation for Plaintiffs' lawsuit, as well as needlessly increasing the costs of the litigation and the burden on Gratuity (and the Court).

Toast asserts no other basis for its counterclaim other than Gratuity's supposedly "baseless" lawsuit. (Dkt. 135 at 49.) It is thus based solely on Gratuity's petitioning activities alone and has no purported substantial basis other than the petitioning activities. Under Massachusetts law, once this has been established, "the anti-SLAPP statute—at step two—'requires allowance of the special motion to dismiss, unless the [special motion opponent] shows' that the special motion proponent's exercise of its right of petition 'was devoid of any reasonable factual support or any arguable basis in law' and . . . 'caused actual injury to the [special motion opponent].'" *Kirby*, 2025 U.S. Dist. LEXIS 165113, at *12-13 (internal citation omitted).

Of course, Toast cannot meet that standard. As this Court has already ruled in its denial of Toast's motion to dismiss, Gratuity's claims contain sufficient factual support to survive a motion to dismiss and are grounded in the law. Further, "the Supreme Judicial Court has

11

emphasized that proving that particular petitioning activity is 'devoid' of *any* reasonable factual support or *any* arguable basis in law is a difficult task." *Kirby*, 2025 U.S. Dist. LEXIS 165113, at \*13 (quoting *Hidalgo v. Watch City Constr. Corp.*, 105 Mass. App. Ct. 148, 153, 250 N.E.3d 568 (2024) (quoting *Bristol Asphalt*, 493 Mass. at 557). Toast, in its two motions to dismiss, already failed to show that Gratuity's claims do not contain sufficient factual matter to state a claim for relief that is plausible on its face. Therefore, the Court should dismiss Toast's counterclaim for unfair competition.

### B.     Defendant's Count II Counterclaim Is Based Solely on Plaintiffs Petitioning Activity

First, "[a]n abuse of process claim is—by definition—'based on . . . protected petitioning activity; i.e., the commencement of [an] action.'" *Kirby*, 2025 U.S. Dist. LEXIS 165113, at \*22 (quoting *McLaughlin v. Rubenstein*, SUCV20163811BLS1, 2017 Mass. Super. LEXIS 182, 2017 WL 5985470, at \*3 (Mass. Super. Ct. Oct. 12, 2017)); *see also Hidalgo v. Watch City Constr. Corp.*, 105 Mass. App. Ct. 148, 150-51, 250 N.E.3d 568 (2024) (noting that claims for abuse of process are "prima facie subject to dismissal under the anti-SLAPP statute"). While this does not mean that an abuse of process claim will always be solely based on a special movant's petitioning activity, that *is* the case here.

Toast's counterclaim for abuse of process rests on the premise that "Gratuity filed this suit for the ulterior and illegitimate purpose of disruption to Toast's business and to gain settlement leverage against Toast in the pending Patent Case . . . ." (Dkt. 135 at 57.) Toast even goes so far as to mischaracterize this quote as Gratuity having "admitted that it filed this action because its 'negotiating position was pretty weak.'" (Dkt. 135 at 58.) Yet, when read in full context, it is clear that this quote was not Gratuity admitting that its negotiating position was weak. Rather, it was counsel informing Judge Badalamenti that *Toast* indicated that Gratuity's

12

negotiating position was weak.  (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 45 Transcript at 14:25-15:5.) ("Once the case was stayed pending the IPR, there was some discussion between counsel as to whether or not there was any room for, you know, an agreement to be reached, but it was made pretty clear to us that given the IPR, our negotiating position was pretty weak and that it was not going to be a very favorable situation for us.")  Nowhere in the record does Gratuity ever make an admission such as that claimed by Toast.

Besides the matter of Toast inappropriately profiting from stolen intellectual property, Gratuity had to file suit for trade secret misappropriation urgently in part due to the fact that Toast was publishing the misappropriated trade secrets and how-to videos on its website, actively devaluing Gratuity's intellectual property.  Gratuity further established that its causes of action related to the trade secret misappropriation case were separate and distinct from those in this patent infringement lawsuit, and were thus appropriately brought in the separate Florida action.  (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt 50 at ¶¶20-41; *see also* Dkt. 64 at 16-20.)  Toast offers zero evidence of anything nefarious other than quote taken out of context.

While courts in this district have held that "an abuse of process claim may be viable, and not subject to dismissal under the anti-SLAPP statute, when use of process (*i.e.*, the litigation) is part of a larger extortion attempt," that bears no resemblance to the facts here.  *Kirby*, 2025 U.S. Dist. LEXIS 165113, at *17.  Undoubtedly, Toast will continue with their baseless assertion that Gratuity only brought its Florida Action to gain leverage in the stayed patent litigation and argue that this is evidence of a scheme to extort Toast.  However, the only "evidence" Toast offers is that Gratuity brought two lawsuits against Toast, and in one of those lawsuits Gratuity candidly

13

stated to the judge that Toast would not negotiate because Toast felt that "[Gratuity's] negotiating position was pretty weak." (*Gratuity Solutions, LLC, and Gratuity, LLC, v. Toast, Inc.*, No. 2:24-cv-737-JLB-NPM, Dkt. 45 Transcript at 14:25-15:5.)

In short, Toast has brought its counterclaims for unfair competition and abuse of process in retaliation for Gratuity's petitioning activities alone, and Toast has no substantial basis other than or in addition to the petitioning activities. Because Toast has not demonstrated—and cannot demonstrate—that Gratuity's "exercise of its right of petition 'was devoid of any reasonable factual support or any arguable basis in law,'" the Court should dismiss Toast's counterclaim for abuse of process and award Gratuity its attorneys' fees for filing this motion. *Kirby*, 2025 U.S. Dist. LEXIS 165113, at *11.

## V.    CONCLUSION

For the reasons set forth above, Gratuity respectfully requests the Court dismiss Toast's counterclaims Counts I and II, and award reasonable attorneys' fees for Plaintiffs having to file this motion.

Dated: February 24, 2026

/s/ *Alan Wright*

Alan Wright
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010
awright@devlinlawfirm.com

*Attorneys for Plaintiffs*
*Gratuity Solutions LLC and Gratuity, LLC*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Alan Wright*
Alan Wright

15