**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GRATUITY SOLUTIONS, LLC, and, GRATUITY, LLC | |
| Plaintiffs, | C.A. No. 1:22-cv-11539-JEK |
| v. | |
| TOAST, INC., | |
| Defendant. | |

## DEFENDANT TOAST, INC.'S OPPOSITION TO PLAINTIFFS' SPECIAL MOTION TO DISMISS TOAST'S COUNTERCLAIMS I AND II PURSUANT TO THE MASSACHUSETTS ANTI-SLAPP STATUTE

## Table of Contents

INTRODUCTION ............................................................................................................. 5

FACTUAL BACKGROUND ............................................................................................. 5

    A.    The Parties. ............................................................................................................. 5

    B.    Gratuities' Pre-Litigation Activities to Force Acquisition. .................................... 6

    C.    Gratuity Files Meritless Patent Suit. ....................................................................... 7

    D.    Gratuity Files Trade Secret Suit to Gain Leverage. ................................................ 8

ARGUMENT ...................................................................................................................... 9

    I.    Gratuity Has Not Shown That Toast's Claims Are Based on Petitioning Activity Alone. .................... 9

        A. Toast's Chapter 93A Claim Is Not Based Solely on Gratuity's Petitioning Activity. ..................... 12

        B.  Toast's Abuse of Process Claim Is Not Based Solely on Gratuity's Petitioning Activity. ............. 14

CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*477 Harrison Ave., LLC v. Jace Bos., LLC*,
477 Mass. 162 (2017) ....................................................................................................14

*Amherst Cmty. Television, Inc. v. Guidera*,
100 Mass. App. Ct. 1113, 178 N.E.3d 902 (2021)..................................................13

*Ayoub v. CitiMortgage, Inc.*,
No. 15-CV-13218-ADB, 2018 WL 1318919 (D. Mass. Mar. 14, 2018) ..............12

*Blakesley v. Marcus*,
158 F.4th 90 (1st Cir. 2025).............................................................................................9

*Blanchard v. Steward Carney Hosp., Inc.*,
477 Mass. 141 (2017) ...........................................................................................10, 15

*Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*,
493 Mass. 539 (2024) .......................................................................................9, 10, 11

*Giuffrida v. High Country Inv., Inc.*,
73 Mass. App. Ct. 225 (2008)...............................................................................10, 13

*H1 Lincoln, Inc. v. S. Washington St., LLC*,
489 Mass. 1 (2022) ........................................................................................................12

*Hannigan v. Bank of Am., N.A.*,
48 F. Supp. 3d 135 (D. Mass. 2014) ..........................................................................12

*Humphrey v. Comoletti*,
No. 1:15-CV-14170-ADB, 2017 WL 1224539 (D. Mass. Mar. 31, 2017)...........14

*Keystone Freight Corp. v. Bartlett Consol., Inc.*,
77 Mass. App. Ct. 304 (2010)......................................................................................10

*Kirby v. Petit*,
No. 24-CV-12015-AK, 2025 WL 2409905 (D. Mass. June 24, 2025)...........9, 10, 14, 15

*Kon v. Fishman*,
106 Mass. App. Ct. 1110, 2025 WL 3251060 (Nov. 21, 2025)........................10, 11

*McLaughlin v. Rubenstein*,
No. 1684CV03811-BLS1, 2017 WL 11684072 (Mass. Super. Ct. Oct. 12, 2017)..............10

*Vulfovich v. Capps*,
No. CV 25-11980-AK, 2025 WL 4232520 (D. Mass. Nov. 6, 2025).........................9

*Zenon v. Guzman*,
    924 F.3d 611 (1st Cir. 2019)............................................................................................6, 7

**Statutes**

M.G.L. c. 231, § 59H.......................................................................................................6, 7, 10

**INTRODUCTION**

Gratuity Solutions, LLC and Gratuity, LLC's (collectively, "Gratuity" or "Plaintiffs") Special Motion to Dismiss (the "Motion") is based on a mischaracterization of Toast, Inc.'s ("Toast") claims for violation of Chapter 93A and abuse of process.  While Gratuity spills considerable ink contriving a repetitive, erroneous, and irrelevant counter-narrative of the litigation record, it ignores entirely the most salient issue to resolving the Motion: Toast's allegations of Gratuity's *pre-litigation conduct* that support Toast's claims.  Indeed, Toast's claims are based in substantial part on Gratuity's conduct *years* before it initiated litigation.  Since 2019, Gratuity has deployed a variety of tactics in an effort to wrongfully coerce Toast into acquiring Gratuity.  Those efforts eventually culminated in (but were not limited to) Gratuity filing two lawsuits against Toast.  Because Toast's allegations of Gratuity's pre-litigation conduct form a substantial basis for Toast's Chapter 93A and abuse of process claims, the Motion must be denied in accordance with the Massachusetts anti-SLAPP statute.

**FACTUAL BACKGROUND**

**A.  The Parties.**

Toast has developed a restaurant technology platform for restaurants, bars, and other establishments.  Dkt. # 135 ¶ 2, 10.  This platform offers a suite of solutions, including hardware and software that facilitate online ordering, inventory management, payroll, HR management, and data analytics.  *Id.*  Toast also provides application program interfaces ("APIs") that allow its third-party partners to ingest data generated by Toast's products into the partners' own platforms.  *Id.* ¶ 11.  In 2016, Toast built an API for one of its many third-party partners, Gratuity – a Florida-based company that provides payroll processing solutions.  *Id.* ¶ 5, 25. This API allowed Toast customers who use Gratuity software to move point-of-sale and payroll information from Toast's system to Gratuity's tip management software.  *Id.* ¶ 25.

By 2019, there existed a competitive marketplace for software that automated the gratuity

management and distribution process for restaurants.  *Id.* ¶ 13.  Several companies, including Evention,

GraTrack, and Heartland, offered gratuity-management software products and services to the public.

*Id.*  Toast also began developing its own product that would allow its restaurant customers to automate

the process for pooling, allocating, and distributing tips to their employees, which it beta-tested in

approximately 100 of its customers through 2020.  *Id.* ¶ 12, 14-15.  Facing this competitive landscape,

Gratuity embarked on a campaign to be acquired.  *Id.* ¶ 27, 53.

### B.  Gratuities' Pre-Litigation Activities to Force Acquisition.

Gratuity has deployed a variety of tactics in attempting to coerce Toast to acquire it over the

past six years.  *Id.*  In November 2019, Gratuity dispatched an investment bank to communicate

Gratuity's interest in acquisition by Toast.  *Id.* ¶ 27.  On January 13, 2020, Toast personnel met with

principals at the investment bank and Gratuity to discuss the acquisition opportunity.  *Id.* ¶ 29.  In

these communications, Gratuity discussed its ownership of its then-existing U.S. Patent No. 9,741,050

(the "'050 Patent"), which purportedly facilitated gratuity management.  *Id.* ¶ 23-28; *see also* Affidavit

of Ryan P. McManus Exhibit ("Ex.") 1.[1]  But Gratuity did not disclose any trade secrets to Toast.  *Id.*

On January 16, 2020, Toast notified Gratuity it was not interested in acquiring it.  *Id.* ¶ 29.

Undeterred by Toast's rejection, Gratuity's CEO sent an unsolicited email to Toast employees

in September 2021.  *Id.* ¶ 30; Ex. 1.  In that email, Gratuity ███████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ *Id.* ████████████████████

███████████████████████████████████████████████████ *Id.*

---

[1] The Court may take judicial notice of the correspondence from Gratuity submitted herewith, which Toast references at paragraph 30 of its counterclaim.  *See Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) ("we are mindful that we may consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment." (internal quotation omitted); *see also* M.G.L. c. 231, § 59H (in considering a special motion to dismiss under the anti-SLAPP statute, the court may "consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.").

Toast did not respond to Gratuity's overture. *Id.*

The timing of Gratuity's September 2021 email was significant for two reasons. First, Toast had recently launched its own gratuity management product in select restaurants (known as Toast Tips Manager). Dkt. # 135 ¶ 14-15. Second, just days before he sent the September 2021 email, ███████

███████████████████████████████████████████████████████

███████████████████████ Ex. 2.[2] Gratuity's legal maneuvers have thus been, from the beginning, part of a broader strategy to disrupt Toast's business and force an acquisition by Toast. Dkt. # 135 ¶ 39, 49, 51, 57.

Frustrated by Toast's disinterest in acquisition, Gratuity turned to more aggressive tactics to achieve its goal. Gratuity began raising meritless assertions of its inventorship and ownership of algorithms contained in Toast Tips Manager software. *Id.* ¶ 49. For example, Gratuity, through counsel, sent Toast a demand letter dated June 16, 2022 (the "Demand Letter") alleging that Toast's Tips Manager infringed on Gratuity Solutions' then-existing patents which caused ongoing damages to Gratuity. *Id.*; Ex. 3.[3] In that Demand Letter, Gratuity also claimed that Toast was "actively aiding and abetting" others' infringement of Gratuity's technology by, among other things, advertising and selling Toast Tips Manager to Toast's customers. *Id.* Gratuity closed the Demand Letter with a thinly veiled demand for Toast to reconsider its prior declination to acquire Gratuity, inviting Toast "to discuss an appropriate resolution of [Toast's] past and ongoing infringement of the Patents." *Id.*

### C.  Gratuity Files Meritless Patent Suit.

Gratuity's efforts to force an acquisition culminated in its initiation of litigation. In September 2022, Gratuity sued Toast in the District of Massachusetts, alleging, *inter alia*, that Toast had infringed on its '050 and '436 Patents (the "Patent Case"). Dkt. # 135 ¶ 32. This Court subsequently dismissed

---

[2] The Court may take judicial notice of this correspondence. *See Zenon*, 924 F.3d at 616; M.G.L. c. 231, § 59H.
[3] The Court may take judicial notice of this correspondence. *See Zenon*, 924 F.3d at 616; M.G.L. c. 231, § 59H.

Gratuity's infringement claim for the '436 Patent on the ground that it was invalid under 35 U.S.C. § 101. *Id.* ¶ 33. Over Gratuity's objections, the Court also stayed the Patent Case pending *inter partes* review ("IPR") of the '050 claim at the Patent Trial and Appeals Board (the "PTAB"). *Id.* ¶ 34-35. At this point, Gratuity knew its '050 Patent would likely be invalidated.[4] *Id.* ¶ 36.

### D. Gratuity Files Trade Secret Suit to Gain Leverage.

Notwithstanding the stay in the Patent Case, Gratuity *again* filed suit against Toast on nearly identical facts in the Middle District of Florida, alleging, *inter alia*, misappropriation of trade secrets (the "Trade Secret Case"). *Id.* ¶ 36. Gratuity also filed an *ex parte* motion for a temporary restraining order ("TRO") to remove materials from Toast's website, which the court denied. *Id.*; 1:25-cv-10948-JEK Dkt. # 45 at 12:11-15. Even though the parties had been well-acquainted for years, Gratuity never contacted Toast before initiating the Trade Secret Case or filing its *ex parte* motion for a TRO. *Id.* ¶ 37. Indeed, at the hearing on the motion for TRO (the "Hearing"), Judge Badalamenti instructed Gratuity that it should have conferred with Toast before seeking injunctive relief to remove materials from Toast's website, he and later noted in the order denying the TRO that any further motion for injunctive relief should only "be filed after carefully considering the purported misappropriation of trade secrets." *Id.* ¶ 40; 1:25-cv-10948-JEK Dkt. # 45 at 27:19-28:7.

Nonetheless, Gratuity subsequently filed a motion for a preliminary injunction on October 18, 2024. Dkt. # 135 ¶ 43. Gratuity's motion for preliminary injunction was denied by this Court. *Id.* ¶ 45.

It is clear to Toast that Gratuity filed the Trade Secret Case for the collateral purpose of disrupting Toast's business and gaining leverage in settlement discussions, which Gratuity has only confirmed through its conduct and statements during litigation. Dkt. # 135 ¶ 39, 46, 57-59. Gratuity's

---

[4] The PTAB ultimately held that the '050 patent was invalid under 35 U.S.C § 101. Dkt. # 135 ¶ 23.

counsel's statement at the Hearing is but one of the admissions of Gratuity's improper motives, admitting that "it was made pretty clear to us that given the IPR, our negotiating position was pretty weak and that it was not going to be a very favorable situation for us." *Id.* ¶ 39; 1:25-cv-10948-JEK Dkt. # 45 at 15:3-5.

## ARGUMENT

In reviewing a motion to dismiss under the Massachusetts anti-SLAPP statute, courts apply a two-stage burden shifting framework. *Kirby v. Petit*, No. 24-CV-12015-AK, 2025 WL 2409905, at *4 (D. Mass. June 24, 2025), *report and recommendation adopted sub nom. Kirby v. Wiseman*, No. 1:24-CV-12015, 2024 WL 6475951 (D. Mass. July 23, 2025). At stage one, Gratuity, as the proponent of the motion, must "make a threshold showing through the pleadings and affidavits" that its challenged conduct "consists *solely* of [Gratuity's] petitioning activity."[5] *Blakesley v. Marcus*, 158 F.4th 90, 96 (1st Cir. 2025) (emphasis added) (internal quotation omitted). The motion must be denied if Gratuity fails to make this threshold showing and the analysis proceeds no further. *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 493 Mass. 539, 556 (2024). Only if Gratuity meets its burden under the first stage does the court proceed to the second stage. *Id.* At stage two, the motion is allowed unless Toast shows that Gratuity's "petitioning activity was 'devoid of any reasonable factual support or any arguable basis in law and caused [Toast] actual injury.'" *Blakesley*, 158 F.4th at 96 (internal quotation omitted). In applying this framework, "courts must always be aware that both proponents and opponents of special motions to dismiss are engaged in petitioning activity, requiring courts to proceed cautiously when the protection of a proponent's petitioning activity interferes with

---

[5] Contrary to Gratuity's suggestions, the anti-SLAPP statute does not immunize plaintiffs from counterclaims "filed in response to the claim." *Vulfovich v. Capps,* No. CV 25-11980-AK, 2025 WL 4232520, at *6 (D. Mass. Nov. 6, 2025) (internal quotation omitted).

an opponent's own legitimate petitioning rights." *Bristol Asphalt*, 493 Mass. at 554.

### I.  Gratuity Has Not Shown That Toast's Claims Are Based on Petitioning Activity Alone.

For Gratuity's Motion to advance beyond stage one of the burden shifting framework, Gratuity bears the burden of demonstrating that Toast's counterclaims are based upon Gratuity's "petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Bristol Asphalt*, 493 Mass. at 555–56.  Gratuity has not met that burden.

Although "a lawsuit constitutes petitioning activity under the anti-SLAPP statute" as does "any written or oral statement made before or submitted to a judicial body," *see Kirby*, 2025 WL 2409905, at *5 (cleaned up); M.G.L c. 231, § 59H, a party's conduct or statements "not reasonably geared to reaching" a government body do not constitute petitioning activity, *see Blanchard v. Steward Carney Hosp., Inc.*, 477 Mass. 141, 152 (2017), *overruled in part on other grounds by Bristol*, 493 Mass. 539. In particular, courts have routinely recognized that pre-litigation conduct, including sending demand letters, does not constitute petitioning activity.  *Giuffrida v. High Country Inv., Inc.*, 73 Mass. App. Ct. 225, 243 (2008).

Courts have also consistently recognized that even claims based in part on petitioning activity are not subject to dismissal where the petitioning activity is alleged to be "part of a broader scheme . . . to extort the defendants."  *See Kon v. Fishman*, 106 Mass. App. Ct. 1110,  2025 WL 3251060, *4 (Nov. 21, 2025) (unpublished); *see also Kirby*, 2025 WL 2409905, *6 ("[A]n abuse of process claim may be viable, and not subject to dismissal under the anti-SLAPP statute, when use of process (*i.e.*, the litigation) is part of a larger extortion attempt."); *McLaughlin v. Rubenstein*, No. 1684CV03811-BLS1, 2017 WL 11684072, *3 (Mass. Super. Ct. Oct. 12, 2017) (concluding that "entire course of conduct," which included activity "separate and independent from the petitioning activity," "was to create unfair leverage" and that "[t]he conduct was a larger scheme than merely the last step—filing

this law suit"); *Keystone Freight Corp. v. Bartlett Consol., Inc.*, 77 Mass. App. Ct. 304, 315 (2010) (abuse of process claim not subject to anti-SLAPP dismissal because it was supported by allegations of "improper conduct by [defendant] before, after, and separate from [defendant's] petitioning activity").

Here, Toast's claims are not based on petitioning activity alone (i.e., Gratuity's filing of lawsuits). They are instead based upon Gratuity's broader course of conduct leading up to and culminating with the initiation of litigation. That course of conduct spanned several years and consisted of a series of escalating attempts to coerce Toast into acquiring Gratuity, which have included meritless assertions of intellectual property rights and threats to assert those purported rights to interfere with Toast's business. Gratuity's conduct began in 2019, when it approached Toast to request that Toast acquire it and asserted ownership of a tips distribution patent. Dkt. # 135 ¶ 27. Toast declined. *Id.* ¶ 29. Eighteen months later, after Toast had beta-tested its Tips Manager product in approximately 100 restaurants, Gratuity ██████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.* ¶ 12, 14-15, 53; Ex. 2. In furtherance of that strategy, Gratuity contacted Toast again in September of 2021, ████ ████████████████████████████████████████████████████████████ Dkt. # 135 ¶ 30; Ex. 1. Toast did not respond. *Id.* Failing to gain traction with Toast, Gratuity then sent its Demand Letter from counsel falsely claiming inventorship and ownership of algorithms in the software Toast independently developed, and seeking "appropriate resolution" of Toast's purported infringement. Dkt. #135 ¶ 49; Ex. 3.

Toast's counterclaims accurately frame Gratuity's petitioning activity (its lawsuits) as "part of a broader scheme . . . to extort" Toast. *See Kon*, 2025 WL 3251060 at *4. Toast's claims thus have a "substantial basis other than or in addition to" Gratuity's petitioning activities, requiring denial of Gratuity's Motion. *See Bristol Asphalt*, 493 Mass. at 555–56. As set forth below, Gratuity's contrary

11

arguments rest on a mischaracterization of Toast's claims that is inconsistent with the record and should be rejected.

### A. Toast's Chapter 93A Claim Is Not Based Solely on Gratuity's Petitioning Activity.

Courts have long recognized "commercial extortion" as a paradigmatic unfairness that violates Chapter 93A – including "the use of coercive or extortionate tactics by one business to extract undeserved concessions from other business entities." *H1 Lincoln, Inc. v. S. Washington St., LLC*, 489 Mass. 1, 14–15 (2022) (internal quotation omitted). As described above, Toast has alleged a lengthy course of conduct by Gratuity aimed at coercing Toast to acquire Gratuity based on meritless assertions of intellectual property rights. Notably, for purposes of Chapter 93A, the totality of Gratuity's actions must be considered. Even if specific actions, viewed in isolation, would not alone give rise to liability, the relevant conduct for purposes of Chapter 93A is the entirety of Gratuity's actions. *See, e.g.*, *Hannigan v. Bank of Am., N.A.*, 48 F. Supp. 3d 135, 142 (D. Mass. 2014) ("Defendants downplay the allegations by noting that '[n]one of these alleged acts amounts to a Chapter 93A violation' but the relevant conduct is the entirety of defendants' actions, not each action viewed in isolation."); *see also Ayoub v. CitiMortgage, Inc.*, No. 15-CV-13218-ADB, 2018 WL 1318919, at *4 (D. Mass. Mar. 14, 2018) ("while each alleged action by Defendant might not amount to a Chapter 93A violation alone, the relevant conduct is the entirety of [Defendant's] actions, not each action viewed in isolation.") (internal quotations omitted).

Gratuity has not met its burden of showing that Toast's counterclaim for violations of Chapter 93A is based on petitioning activity alone. As described above, Toast's claim is based upon an escalating course of conduct aimed at coercing Toast to acquire Gratuity that spanned several years, eventually culminating in litigation. That conduct is separate from and largely precedes any petitioning activity.

Gratuity's contrary argument mischaracterizes the record. Citing to only paragraph 49 of Toast's counterclaim, Gratuity pronounces that "Toast asserts no other basis for its counterclaim other than Gratuity's 'baseless lawsuit.'" Dkt. # 141 at 11. Gratuity's pronouncement is wrong for two reasons: (1) it ignores the other allegations in support of Toast's Chapter 93A claim; and (2) it selectively quotes the allegation at paragraph 49, omitting Toast's allegations concerning Gratuity's non-petitioning activities.

Whereas Gratuity points only to paragraph 49 of Toast's counterclaim in support of its argument, in paragraph 47, Toast expressly incorporates by reference all of its preceding allegations for purposes of its Chapter 93A claim. Dkt. #135, ¶ 47. Those allegations, along with paragraph 53 of the counterclaim, detail Gratuity's escalating, years-long efforts to force Toast to acquire it. Those efforts began in 2019, continued through 2021 when Gratuity devised a strategy ██████████ ██████████ to force an acquisition, and continued into 2022 when Gratuity sent its Demand Letter – all before filing a lawsuit or engaging in other petitioning activity. *See Giuffrida*, 73 Mass. App. Ct. at 243 (holding that pre-suit demand letter not protected petition activity).

Gratuity also selectively quotes paragraph 49 of Toast's counterclaim, excerpting the allegation concerning its baseless lawsuit while omitting the remaining language discussing Gratuity's pre-litigation conduct. In fact, paragraph 49 invokes the Demand Letter and other Gratuity communications as part of its wrongful conduct: "Gratuity has engaged and continues to engage in unfair and deceptive methods of competition at least through willfully filing a baseless lawsuit against Toast *and repeatedly asserting meritless claims of inventorship and ownership of algorithms to calculate gratuity distribution against Toast*." Dkt. # 135 ¶49 (emphasis added). While filing a lawsuit against Toast might constitute petitioning activity, Gratuity's pre-litigation claims to Toast that it owned the algorithms to calculate gratuity distribution do not. *Giuffrida*, 73 Mass. App. Ct. at 243; *Amherst Cmty. Television, Inc. v. Guidera*, 100 Mass. App. Ct. 1113, 2021 WL 5313165, at

*2(2021) (unpublished) (recognizing that defendant's Chapter 93A counterclaim, "even if based in part on [plaintiff's] lawsuit, also had a substantial basis in [plaintiff's] prelitigation settlement communications, which the judge had already correctly concluded did not constitute petitioning activity."). Because Toast's Chapter 93A claim is not based on Gratuity's petitioning activity alone, and Gratuity has not met its burden of showing otherwise, the Motion must be denied insofar as it seeks dismissal of Toast's Chapter 93A claim.

### B. Toast's Abuse of Process Claim Is Not Based Solely on Gratuity's Petitioning Activity.

Gratuity has also failed to meet its stage-one burden to show that Toast's abuse of process claim is based solely on Gratuity's petitioning activity. Abuse of process is a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself." *477 Harrison Ave., LLC v. Jace Bos., LLC*, 477 Mass. 162, 169 (2017). An abuse of process claim is inherently based, at least in part, on petitioning activity. *Kirby*, 2025 WL 2409905, at *6. But "this does not mean that an abuse of process claim will always be *solely* based on a special movant's petitioning activities." *Id.* (emphasis in original) quoting *477 Harrison Ave.*, 477 Mass. at 169. Courts "have found that an abuse of process claim is not based solely on petitioning activity if there is a showing of conduct separate and independent from the petitioning activity." *Id*. (cleaned up). Moreover, "when there are factual allegations and evidence that, independent of the process itself, support a finding that the defendant did in fact have an ulterior motive in initiating the process, a special motion to dismiss should be denied under the first prong." *Humphrey v. Comoletti*, No. 1:15-CV-14170-ADB, 2017 WL 1224539, at *5 (D. Mass. Mar. 31, 2017).

As it did with Toast's Chapter 93A claim, Gratuity incorrectly argues that Toast's abuse of process claim is based solely on petitioning activity, even going so far as to argue that "the only 'evidence' Toast offers is that Gratuity brought two lawsuits against Toast." Dkt. #141 at 13. This

14

argument again ignores that Toast's abuse of process claim incorporates by reference all of Toast's preceding allegations. Dkt. #135, ¶ 56. And those allegations reflect that Toast's abuse of process claim is based, in substantial part, on Gratuity's conduct before it initiated this litigation. Specifically, the counterclaim chronicles Gratuity's repeated efforts designed to coerce Toast to acquire it, including, in 2021 and the summer of 2022, Gratuity's meritless claims of ownership of algorithms to calculate tip distribution and false assertions of Toast's patent infringement. *Supra* at 6-7. None of these actions by Gratuity were "reasonably geared to reaching" a government body, and therefore do not constitute petitioning activity. *Blanchard*, 477 Mass. at 141, 152. All were intended to coerce Toast into acquiring Gratuity. *Kirby*, 2025 WL 2409905, at *6 ("courts have declined to dismiss abuse of process claims under the anti-SLAPP statute when those claims were alleged to be part of a broader extortion scheme."). These allegations based on Gratuity's non-petitioning activities require denial of its Motion to dismiss Toast's abuse of process claim.

As separate grounds to deny the Motion with respect to the abuse of process claim, Gratuity's non-petitioning activities support a finding that it had an ulterior motive in initiating the Trade Secret Case. Gratuity has schemed to force Toast to acquire it for years, including by threatening meritless claims against Toast for patent infringement. Gratuity ultimately filed such claims in the Patent Case. After Toast successfully invalidated the '436 Patent and the '050 Patent was on the brink of invalidation, Gratuity filed the Trade Secret Case to gain negotiation leverage. Gratuity's counsel's comments at the September 4, 2024 hearing — stating that "our negotiating position was pretty weak and that it was not going to be a very favorable situation for us" — merely confirm Toast's allegations that Gratuity had an ulterior motive in filing the Trade Secret Case. *See* 1:25-cv-10948-JEK Dkt. # 45 at 15. Accordingly, the Motion to dismiss Toast's abuse of process claim must be denied.

## CONCLUSION

For the reasons stated herein, Toast respectfully requests that this Court deny the Motion.

Respectfully submitted,

TOAST INC.,

By its Attorneys,

*/s/ Ryan P. McManus*
Ryan P. McManus (BBO # 673219)
Jeffrey K. York (BBO # 706014)
HEMENWAY & BARNES LLP
75 State Street
Boston, MA 02109
(617) 227-7940
rmcmanus@hembar.com
jyork@hembar.com

16

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District of Massachusetts using the CM/ECF system this 10th day of March, 2026, which system sent notification of such filing to all counsel of record.

*/s/ Ryan P. McManus*
Ryan P. McManus