**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|   |   |
|---|---|
| GRATUITY SOLUTIONS, LLC, and GRATUITY, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   No. 1:22-cv-11539-JEK |
| TOAST, INC., | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM AND ORDER ON PLAINTIFFS' SPECIAL**
**MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS I AND II**
**PURSUANT TO THE MASSACHUSETTS ANTI-SLAPP STATUTE**

**KOBICK, J.**

Defendant Toast, Inc. has asserted counterclaims against plaintiffs Gratuity Solutions, LLC, and Gratuity, LLC (collectively, "Gratuity") for unfair competition, in violation of M.G.L. c. 93A, and for abuse of process. Those counterclaims allege that, for years, Gratuity engaged in coercive tactics in an effort to be acquired by Toast, including by threatening meritless patent infringement claims and filing two baseless lawsuits against Toast that are part of this consolidated action. Pending before the Court is Gratuity's special motion to dismiss these counterclaims pursuant to the Massachusetts anti-SLAPP statute, M.G.L. c. 231, § 59H.[1] Since Gratuity cannot demonstrate that either counterclaim is based solely on its own petitioning activity in filing and prosecuting its lawsuits, its special motion to dismiss will be denied.

---

[1] The acronym "SLAPP" stands for "strategic litigation against public participation." *See* M.G.L. c. 231, § 59H.

## BACKGROUND

The following facts are recounted based on the allegations in Toast's counterclaims and the evidentiary submissions filed in connection with the special motion to dismiss. *See* M.G.L. c. 231, § 59H ("court[s] shall consider the pleadings and supporting and opposing affidavits"); *Blakesley v. Marcus*, 158 F.4th 90, 96, 101 (1st Cir. 2025).

Toast has developed a technology platform for restaurants that can manage payroll, online ordering, human resources, inventory, and, most relevant here, the payment of tips or gratuities earned by employees. ECF 135, at 24-25, ¶¶ 2, 10. Toast also offers application program interfaces, which permit third-party partners to incorporate data from Toast's products into their own platforms. *Id.* at 25, ¶ 11. In September 2016, Toast agreed to build such an interface for Gratuity so that Toast's customers could move their payroll and point of sale data from Toast's platform to Gratuity's software for managing employee gratuities. *Id.* at 28, ¶ 25.

By 2019, software for calculating, pooling, and distributing tips had become publicly available and was offered by a number of companies, including Gratuity. *Id.* at 26, ¶ 13. Since that time, Gratuity has repeatedly sought to be acquired by Toast. *Id.* at 28, 33, ¶¶ 27, 53. Gratuity arranged for an email to be sent to Toast's CEO on its behalf in November 2019 about an "[a]cquisition [o]pportunity." *Id.* at 28, ¶ 27. A few months later, in January 2020, Toast met with Gratuity but decided against pursuing an acquisition. *Id.* at 28, ¶ 29. Gratuity contacted Toast again in September 2021 seeking to be acquired; Toast, however, did not respond. *Id.* at 29, ¶ 30.

After those overtures failed, Gratuity allegedly turned to "repeatedly asserting meritless claims of inventorship and ownership of" gratuity distribution algorithms against Toast. *Id.* at 32, ¶ 49. In June 2022, to take one example, Gratuity's counsel sent Toast a demand letter claiming infringement of its U.S. Patent Nos. 10,726,436 (the "'436 patent") and 9,741,050 (the "'050

patent") and seeking "an appropriate resolution of [Toast's] past and ongoing infringement of the Patents." ECF 144-4; *see also* ECF 144, at 6-7.

In September 2022, Gratuity sued Toast in this Court for infringing those two patents and for breaching two non-disclosure agreements. ECF 1; ECF 135, at 29, ¶ 32. The Court dismissed the '436 patent infringement claim in June 2023 on invalidity grounds. ECF 48; ECF 135, at 29, ¶ 33. It then stayed the case in April 2024 pending resolution of the *inter partes* review proceeding of the '050 patent. ECF 109; ECF 135, at 29, ¶¶ 34-35. During that stay, Gratuity filed another lawsuit in the Middle District of Florida alleging misappropriation of trade secrets under state and federal law, civil conspiracy to misappropriate trade secrets, and intentional interference with contractual relations. ECF 135, at 29-30, ¶ 36. In Toast's telling, Gratuity filed that "baseless action," "knowing that its remaining patent would likely be invalidated," "because it was unhappy with the stay in the Patent Case and its poor settlement leverage." *Id.* at 29, 32, ¶¶ 36, 46. The Patent Trial and Appeal Board ultimately determined that the claims in the '050 patent are unpatentable as obvious in light of prior art. ECF 113 and 113-1. After the Middle District of Florida transferred Gratuity's second case to this District, this Court denied Toast's motion to dismiss Gratuity's tort claims and consolidated both cases. ECF 128; *see* ECF 124 and 125, *Gratuity Solutions, LLC v. Toast, Inc.*, No. 25-cv-10948-JEK (D. Mass. Nov. 18, 2025).

Toast thereafter asserted four counterclaims against Gratuity in the second-filed and now consolidated action. ECF 135, at 32-37, ¶¶ 47-78. The two counterclaims at issue here are for unfair competition under Chapter 93A and for abuse of process. *Id.* at 32-34, ¶¶ 47-60. In February

2026, Gratuity moved to dismiss those counterclaims pursuant to the Massachusetts anti-SLAPP statute, M.G.L. c. 231, § 59H. ECF 141.[2] Toast opposed that motion in March 2026. ECF 144.

## DISCUSSION

Under the Massachusetts anti-SLAPP statute, Gratuity "may bring a special motion to dismiss" asserting that Toast's "counterclaims . . . are based on [Gratuity's] exercise of its right of petition under the constitution of the United States or of the commonwealth." M.G.L. c. 231, § 59H. A party's "exercise of its right of petition" includes "any written or oral statement made before or submitted to a . . . judicial body." *Id.* "Commencement of litigation is quintessential petitioning activity." *477 Harrison Ave., LLC v. JACE Bos., LLC*, 483 Mass. 514, 520 (2019).

The Court's consideration of this special motion to dismiss under the anti-SLAPP statute proceeds in two stages. *See Blakesley*, 158 F.4th at 96 (citing *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 493 Mass. 539, 555-58 (2024)). At the first stage, Gratuity "must 'make a threshold showing through the pleadings and affidavits that the claims against it are based on [its] petitioning activities *alone* and have no substantial basis other than or in addition to the petitioning activities.'" *Bristol Asphalt*, 493 Mass. at 555 (emphasis added) (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 167-68 (1998)). If Gratuity were to meet that burden, Toast would then need to demonstrate at stage two that Gratuity's petitioning activity

---

[2] Under the statute, the "special motion to dismiss may be filed within sixty days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." M.G.L. c. 231, § 59H. Because Toast's counterclaims were served on December 16, 2025, Gratuity's special motion to dismiss was due on February 17, 2026. *See* ECF 135. Toast agreed to extend that deadline, and Gratuity filed the motion on February 24, 2026. ECF 141, at 11. The Court deems the parties' agreed-upon one-week extension of time proper, and this motion is therefore timely.

"'was devoid of any reasonable factual support or any arguable basis in law'" and caused Toast "'actual injury.'" *Id.* at 557 (quoting M.G. L. c. 231, § 59H).[3]

## I.    <u>**Chapter 93A Counterclaim.**</u>

Gratuity argues that Toast's Chapter 93A counterclaim is based solely on Gratuity's petitioning activity in filing two lawsuits. Chapter 93A prohibits "an unfair or deceptive act or practice" between those "engage[d] in the conduct of any trade or commerce." M.G.L. c. 93A, § 11. An act or practice is unfair if it "'causes substantial injury to consumers or other businesses'" and falls "'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'" or "'is immoral, unethical, oppressive, or unscrupulous.'" *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 587 (2024) (quoting *H1 Lincoln, Inc. v. S. Washington St., LLC*, 489 Mass. 1, 14 (2022)). Such unfair conduct can include "commercial extortion," where one company uses "coercive or extortionate tactics . . . to extract undeserved concessions from other business entities." *H1 Lincoln*, 489 Mass. at 15 (quotation marks omitted). To warrant dismissal of Toast's Chapter 93A counterclaim pursuant to the anti-SLAPP statute, Gratuity must show that the counterclaim is "based solely on its petitioning activity." *Columbia Plaza*, 493 Mass. at 579.

In light of the pleadings and evidence submitted by Toast—which Gratuity does not dispute with its own evidence—Gratuity fails to make that showing. *See Bristol Asphalt*, 493 Mass. at 561 ("At the first stage, a court need only conduct a facial review of a special motion opponent's pleading to identify which factual allegations serve as the basis for a particular claim."). Toast's Chapter 93A counterclaim is not predicated solely on Gratuity's filing of two allegedly baseless

---

[3] Because, as will be explained, Gratuity has failed to meet its burden at stage one with respect to both counterclaims, the burden does not shift to Toast and the Court need not reach stage two.

lawsuits. Toast also challenges Gratuity's purportedly "coercive or extortionate" prelitigation tactics that were, in its view, designed to force it to acquire Gratuity. *H1 Lincoln*, 489 Mass. at 15 (quotation marks omitted). Even though "[s]everal patents had issued and were in the public domain claiming methods or products relating to gratuity management" by 2019, Toast alleges, Gratuity "repeatedly assert[ed] meritless claims of inventorship and ownership of algorithms to calculate gratuity distribution against Toast" "in order to convince Toast to acquire Gratuity's business." ECF 135, at 26, 32-33, ¶¶ 13, 49, 53. Among other conduct, in June 2022, Gratuity threatened patent infringement claims in a demand letter before filing suit in September 2022. *Id.* at 29, ¶ 32; ECF 144-4. In general, prelitigation demand letters like the one Gratuity sent to Toast do not constitute petitioning activity under the anti-SLAPP statute. *See Giuffrida v. High Country Inv., Inc.*, 73 Mass. App. Ct. 225, 243 (2008); *Kalter v. Wood*, 67 Mass. App. Ct. 584, 587-91 (2006).

Because Toast has premised its Chapter 93A counterclaim in part on conduct that occurred before Gratuity's filing of its lawsuits, the counterclaim seeks redress for substantial non-petitioning activity and is therefore not subject to dismissal. *See Columbia Plaza*, 493 Mass. at 579 ("the special motion to dismiss should have been denied as to both [Chapter] 93A claims" because "a substantial factual basis for [those] claims was the allegation that [defendant] acted in violation of its contractual agreements with [plaintiff]"); *Allied Waste Servs. of Massachusetts, LLC v. Imperial Distributors, Inc.*, 90 Mass. App. Ct. 1105 (2016) (Rule 1:28 decision) (affirming denial of special motion to dismiss Chapter 93A counterclaim where, before filing suit, plaintiff allegedly "'willfully and intentionally refused to remove its equipment from [defendant's] property'" "to prevent [defendant] from switching waste removal companies"). The Legislature did not intend for "the incredibly powerful procedural protections" of a special motion to dismiss to apply to such

mixed claims. *Bristol Asphalt*, 493 Mass. at 556 (emphasis removed). Rather, claims like Toast's premised on both petitioning and non-petitioning activity should be addressed "in the ordinary course of litigation." *Id.*

## II.    Abuse of Process Counterclaim.

Gratuity also contends that Toast's abuse of process counterclaim is based only on Gratuity's filing of these now consolidated actions. This counterclaim "has three elements: (1) 'process was used,' (2) 'for an ulterior or illegitimate purpose,' (3) 'resulting in damage.'" *477 Harrison*, 483 Mass. at 526-27 (quoting *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010)). Because "abuse of process is a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself," such a "claim will always be, at least in part, based on a special movant's petitioning activities." *Id.* at 525, 527 (quotation marks omitted). But "this does not mean that an abuse of process claim will always be *solely* based on" such activities. *477 Harrison Ave., LLC v. Jace Bos., LLC*, 477 Mass. 162, 169 (2017); *see Allegaert v. Harbor View Hotel Owner LLC*, 497 Mass. 328, 339 (2026) ("[P]roper application of the anti-SLAPP framework does not mean that all such claims will be subject to dismissal under § 59H."). To win dismissal of Toast's abuse of process counterclaim, Gratuity must establish that the claim does not challenge "conduct separate and independent from [Gratuity's] petitioning activity." *Keystone Freight Corp. v. Bartlett Consol., Inc.*, 77 Mass. App. Ct. 304, 314 (2010).

The same analysis with respect to Toast's Chapter 93A counterclaim applies to its abuse of process counterclaim. As Gratuity acknowledges, "a party's attempt to use an invocation of process to extort an opposing party constitutes a substantial nonpetitioning basis for an abuse of process claim." *477 Harrison*, 477 Mass. at 169; *see* ECF 141, at 17. Gratuity allegedly did just that by threatening—in advance of filing its two lawsuits—"baseless" patent infringement claims

7

to coerce Toast into acquiring its business. ECF 135, at 32-33, ¶¶ 46, 49, 53; *see* ECF 144-4; ECF 144, at 6-7.[4] Gratuity's "ulterior motive" of acquisition may reasonably be inferred by its course of conduct since 2019, which involved numerous exchanges between the companies before Gratuity filed its lawsuits. *Ladd v. Polidoro*, 424 Mass. 196, 198 (1997) (quotation marks omitted). Given Gratuity's allegedly improper prelitigation conduct, Toast's abuse of process counterclaim cannot be dismissed. *See Keystone Freight*, 77 Mass. App. Ct. at 316 (affirming denial of special motion to dismiss plaintiff's abuse of process claim that was "predicated on [defendant's] administrative misconduct prior to and subsequent to [defendant's] filing [of] the collection action"); *Kon v. Fishman*, 106 Mass. App. Ct. 1110 (2025) (Rule 23.0 decision) (same where abuse of process counterclaim "fairly allege[d] that the lawsuit was part of a broader scheme by the minority shareholders to extort the defendants to agree to new corporate governance terms" based in part on "spreading misinformation").

## CONCLUSION AND ORDER

For the foregoing reasons, Gratuity's special motion to dismiss Toast's counterclaims I and II pursuant to the Massachusetts anti-SLAPP statute, ECF 141, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: May 13, 2026                    UNITED STATES DISTRICT JUDGE

---

[4] Even though most of these allegations are nested under the Chapter 93A counterclaim, they are expressly "incorporate[d] by reference" and are, in any event, accepted as true at the pleading stage as factual allegations, not legal conclusions. ECF 135, at 34, ¶ 56; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013) ("The critical question is whether the claim, viewed holistically, is made plausible by the cumulative effect of the factual allegations contained in the complaint." (quotation marks omitted)).